26 C.C.P.A.(Patents)

### LEVER BROS. CO. v. NOBIO PRODUCTS, Inc.
### Patent Appeal No. 4142.

Court of Customs and Patent Appeals.

May 29, 1939.

918

Spencer A. Studwell and Harry A. English, both of New York City, for appellant.

Thomas L. Mead, Jr., of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents dismissing appellant's notice of opposition, and holding appellee's mark registerable under the Trade-Mark Act of February 20, 1905, 15 U.S.C.A. § 81 et seq.

Appellee's mark is for use on deodorants, and comprises an outline drawing of an Egyptian figure, across which appears the word "NOBIO." The figure and the word "NOBIO" are enclosed within two concentric circles, between which appear the words "natural oils ban intimate odors." The latter words are disclaimed apart from the mark as shown. The word "NOBIO" is clearly the dominant feature of appellee's mark.

It appears from the record that appellee's product, which is in liquid form, is a household and personal deodorant. It is put up in two, four, and sixteen ounce bottles, and is sold at retail in drug stores. It is also apparently sold direct to consumers in one-gallon containers. It has no cleansing properties. Appellee claimed in its application that it had used its mark on its goods since April 2, 1934.

The witness Allan C. Eldredge, testifying for appellee, stated that he was the "head of the business there [in New York City] which is known as the Allan Eldredge Studios, contract furnishing and decorating of apartments and hotels throughout the metropolitan district, principally, and we also have a business, the Nobio Products, Inc., of which I am the president," and that he was an artist and did "mural paintings in connection with the decorative work." Relative to the origin of appellee's mark, the witness stated: "Being an artist, I made a number of sketches and finally selected for final use among these sketches one which is a circular symbol, around the outer border of which there is a series of letters, 'N-O-B-I-O.' These letters in their given order are the initials of the descriptive sentence which is a part of our composite mark. The said sentence reads, 'Natural oils ban intimate odors' * * *. The descriptive sentence is indicative of the nature of our product and its use."

It appears from the record that appellant's product is a toilet soap; that it is sold under the trade-mark "Lifebuoy"; that it is made up in cake form; that it is used both for its cleansing and deodorizing properties; that it has been on the market and sold extensively throughout the United States since the year 1895 in drug stores and other retail stores; that, commencing in 1926, appellant advertised its "Lifebuoy" soap as being effective in preventing the odor of perspiration; that, in 1928, appellant began advertising its soap as a preventive of "B. O.," which letters, it was explained in appellant's advertisements, meant "body odor"; that for several years prior to the filing of appellee's application, appellant used the letters "B. O." in its advertisements without the words "body odor," because the public had come to understand from appellant's prior advertisements that "B. O." meant "body odor"; that during the period from 1928 to the time of the taking of the testimony in this case—October, 1936—appellant had expended more than $10,000,000 in advertising its "Lifebuoy" soap as a deodorant and a preventive of "B. O."; and that, in addi-

tion to advertising its products via newspapers, magazines, radio, and sign boards, appellant displayed advertisements in street cars, subway and elevated trains, and on large posters in baseball parks. Appellant also used other forms of advertising in which it emphasized the deodorizing qualities of its "Lifebuoy" soap as a preventive of "B. O."

It appears from appellant's Exhibit No. 6, which is a collection of approximately 36 clippings from nationally known publications, that cartoonists, newspaper editorial writers, columnists, and feature writers have referred to "B. O." as signifying "body odor." In many of the clippings either appellant or its product ("Lifebuoy" soap), or both, are mentioned. The notation "No B. O." appears in some of the clippings. We quote the following from a clipping taken from the New York Sun: "Speaking of the campaign to keep fox hunting alive, a prominent metropolitan editor confesses that he has a great idea for a poster to be used by a nationally famous soap. It will show a fox, safe and grinning in an open field, while the hounds and riders gallop by. And the title of the advertisement will be: 'No B. O.'"

It clearly appears from the record that, although appellant never used the letters "B. O." or the words "body odor" as a trade-mark or otherwise on its goods, it has so extensively advertised its "Lifebuoy" soap as a preventive of "B. O." that it has become popularized and identified in the mind of the purchasing public by the term "B. O."; and that such term clearly indicates appellant's product to the purchasing public. Accordingly, we are of opinion that the term "B. O." serves to indicate origin in appellant, and that its use is analogous to that of a trade-mark. John Wood Manufacturing Co. v. Servel, Inc., 77 F.2d 946, 22 C.C.P.A., Patents, 1370, and cases cited.

In the case of Sears, Roebuck & Co., v. Old Colony Shoe Co., 82 F.2d 709, 23 C.C.P.A., Patents, 1039, relied upon here by counsel for appellee, it was held that as it was not alleged in the petition for cancellation either that the term "Gold Bond" had been used by the petitioner on its goods prior to the registrant's date of first use or that the petitioner's goods had been popularized and identified in the mind of the purchasing public by that term, the petitioner failed to allege either a trademark use or a use analogous thereto.

In the instant case, however, it appears that, long prior to appellee's first use of its mark, appellant's "Lifebuoy" soap had become popularized and identified in the mind of the purchasing public by the term "B. O." and that such term indicated the origin of appellant's product.

It may be, although we do not so hold, that appellant is not entitled to the exclusive use of the term "B. O." However, the right to oppose the registration of a trade-mark does not depend upon the exclusive ownership by an opposer of a similar mark. Virginia Dare Extract Co. Inc. v. Adah Mae Dare, 70 F.2d 118, 21 C.C.P.A., Patents, 1086. It is sufficient if an opposer establishes "priority of use analogous to a trade-mark use" of a tradename, and the "likelihood of damage to him by the registration of such mark to another." John Wood Manufacturing Co. v. Servel, Inc., supra.

It appears from the record that appellant used the term "B. O." in connection with the advertising of its "Lifebuoy" soap long prior to the first use by appellee of its mark. Accordingly, the only remaining question to be determined is whether appellant is likely to be damaged by the registration of appellee's mark, the dominant feature of which is the term "NOBIO."

According to the testimony of the witness Eldredge, who originated appellee's mark, he was well aware of appellant's advertising use of the term "B. O." at the time appellee's mark was adopted. The witness, who at times in his testimony had apparently pronounced the term "NOBIO" "NO-B-O" and at other times "NO-BYE-O," stated: "We don't limit the pronunciation. We don't know how people are going to pronounce it." He further testified as follows:

"XQ. 163. How do you pronounce the r-a-d-i-o? A. All right, not like Mr. Smith.

"XQ. 164. In other words, you would pronounce r-a-d-i-o as though it were spelled ray-dee-o, is that correct? A. Yes, with that word there is an accepted pronunciation. With N-o-b-i-o, so far as I know, there is not, as yet.

"XQ. 165. So that some persons might naturally pronounce it the way that I have first designated [NO-B-O] and the others in the way that I designated secondly [NO-BYE-O], is that correct? A. I grant you that."

920

It is evident, we think, that, although the terms "NOBIO" and "B. O." do not look exactly alike, the term "NOBIO" will be pronounced as though it were spelled "NO-B-O"; that appellee intended that its term "NOBIO" should be understood as meaning no "B. O." (no body odor), and that it will be so understood by the purchasing public. Accordingly, for all practical purposes, appellee has merely combined the negative "NO" with appellant's term "B. O." for the purpose of indicating to the purchasing public that its product will prevent "B. O." (body odor).

We are of opinion that the goods of the parties possess the same descriptive properties; that the terms "NOBIO," the dominant feature of appellee's mark, and "B. O." are confusingly similar; that appellant is entitled to use the term "B. O" in connection with the marketing of its goods; and that appellant would be damaged by the registration of appellee's mark.

For the reasons stated, the decision is reversed.

Reversed.