POWERMATICS, INC., Appellant,

v.

GLOBE ROOFING PRODUCTS CO., Inc., Appellee.

Patent Appeal No. 7281.

United States Court of Customs and Patent Appeals.

Feb. 11, 1965.

Burgess, Dinklage & Sprung, New York City (Arnold Sprung, New York City, of counsel) for appellant.

Robert C. Williams, D. D. Allegretti, Chicago, Ill., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

WORLEY, Chief Judge.

Powermatics appeals from the decision of the Trademark Trial and Appeal Board awarding priority to Globe, senior party, in a trademark interference between Globe's Registration No. 704,179 [1] for "PANELUME" as a trademark for aluminum clapboard siding, and Powermatics' application [2] for registration of the same term as a trademark for substantially identical goods.

Globe took no testimony and is restricted to its February 18, 1960 filing date as the date of first use of the mark. Kiekhaefer v. Willys-Overland Motors, Inc., Etc., 236 F.2d 423, 43 CCPA 1013.

The board apparently regarded Powermatics to be the prior user, stating:

"In this connection, the junior party has offered the testimony of the president of its corporation and a considerable amount of documentary exhibits from which it is deemed conclusively to appear that the junior party continuously used the mark 'PANELUME' or the phonetic equivalent thereof 'PANELUM' for insulated aluminum building panels from as early as December 1959 to some indefinite time in November 1960. * * *"

However, it noted that the business of Powermatics had been "dormant" since November 1960 when its physical assets were sold to satisfy a government lien, and further stated:

"The junior party's president has testified that he is presently in the employ of the Panelume Corporation of America, a stranger to this proceeding, which is said to be manufacturing aluminum paneling under the mark 'PANELUME'; that he supervises the manufacture of the product; and that he has a verbal agreement 'with this gentleman very shortly that I will resume under the name Powermatics, and he will distribute this product for me.' There is, however, nothing in the instant record to show that the Panelume Corporation of America is using the mark under a license agreement with the junior party, as distinguished from its president, and, so far as can be ascertained herein, the use made of the mark by such third person has been in its own behalf rather than in behalf of the junior party."

The board concluded that "the senior party's rights in the mark here involved are superior to those of the junior party."

While Globe agrees with the board's reason for awarding priority, it urges that we also consider the propriety of the board's ruling that appellant had continuously used "PANELUME" or "PAN-ELUM" from December 1959 to some time in November 1960. As the winning party below, it is entitled to raise that issue for reasons similar to those set out in Klemperer v. Price, 271 F.2d 743, 47 CCPA 729.

1. Issued September 13, 1960 on application Serial No. 91,156, filed February 18, 1960.

2. Serial No. 100,390, filed July 6, 1960, asserting use since January 18, 1960.

From our evaluation of the record we conclude that the board erred in finding that Powermatics has established priority of use.

Powermatics, as junior party, has the burden of proving that it is entitled to the registration it seeks and, as against a registered mark, doubts are to be resolved against it. Brewster-Ideal Chocolate Co. v. Dairy Maid Confectionary Co., 62 F.2d 844, 20 CCPA 848; B. R. Baker Company v. Lebow Brothers, 150 F.2d 580, 32 CCPA 1206. Powermatics must show that, at the time Globe filed, Powermatics was already in a position to register its mark, had it chosen to do so, and that it would have been able to state in its application "that the mark is in use in commerce," as required by section 1 of the Trademark Act of 1946. West Disinfecting Co. v. Samuel A. Onorato, 242 F.2d 197, 44 CCPA 834.

The following testimony of Powermatics' president on direct examination is pertinent to the issue of priority:

"Q26. And to your recollection, when is the first time that you used this mark? A. To my recollection, it was about the first week in December or possibly the second week in December, 1959.

"Q27. And would you describe how you used this mark? A. Yes. We did various forms of advertising, particularly in The New York Sunday News, where we would have the trade name, the name Panelume [Pan-elum?], I should say, written right across in big letters in the newspaper, and had certain stickers made around that time, where most of the panels that went on [out?] would have stickers on with the name Panelume [Pan-elum?].[3]

"Q40. Did you actually ship goods * * * in response to that ad? A. Yes, we did.

"Q41. Were the goods marked? A. *I can't say*, to my recollection, *whether they were or not.* They were *supposed* to be, *but I didn't have all the control in the factory, whether they did or not.*

"Q42. Was it the standard practice to mark the goods. A. Yes. They were instructed so to label all the goods. But sometimes they might have missed. I can't say for sure if they did on every one.

"Q43. Do you, to your recollection, recall the shipping of any panels with the name Panelume [Pan-elum?] in response to this ad? A. To my recollection, I can't say for sure but if it was in the month of December they [there] had to be panels going out with the name Panelume [Pan-elum?] on them. I just don't know which ones.

"Q48. And when did you first ship goods in interstate commerce with the spelling Panelume? A. To my recollection, *it would probably have been February of 1960 or possibly early March, 1960.*

"Q49. When you changed over from the previous form? A. Yes.

"Q56. And was it your normal practice to ship panels in response to such orders with the mark Panelume on them? A. Yes. It was normal practice to ship anything that went out with our names on it."

On cross-examination, the witness testified:

"XQ112. Did you also use gummed labels for shipping or any-

3. Appellant's Exhibit 1, introduced at this time, shows the name "PAN-ELUM" advertised in The New York Sunday News. The witness was asked "Did you continue using the name in that form?" and answered "No. * * * I let this go as is until I so instructed the advertising

agency to change it to leave the hyphen off and put the 'E' at the end." Upon being asked "When was that done?", the witness said "*I don't recall.* To my recollection *it might have been* around the beginning of February or the end of January, 1960." [Emphasis supplied]

thing of that character? A. Gummed labels?

"XQ113. Yes. A. Well, we would—if we ship anything, it would have a—that we would type. We would type a gummed label, a blank gummed label. We would type the person's name that it came from.

"XQ114. *But that did not carry the Panelume trade mark.* A. *Not to my—I can't say for sure if it did or not. I can't say for sure.*

\*       \*       \*       \*       \*

"XQ156. Have you ever had any labels bearing the Panelume trade mark other than the label like that one, which was furnished to the Patent Office with the application? \* \* \* A. *I don't recall if I did or I didn't.*" [All emphasis supplied]

■ While oral testimony, if sufficiently probative, is normally satisfactory to establish priority of use in a trademark proceeding, we do not find the testimony and corroborative exhibits in the record before us to discharge Powermatics' burden in that regard. Thus, the testimony of the witness that Powermatics "had certain stickers made around that time" (December 1959), and that most of the panels that went out "would have stickers on" with the name "PANELUME" or "PAN-ELUM," must be considered in light of his later testimony that "I don't recall if I did or I didn't" ever have labels bearing the "PANELUME" mark other than the ones furnished the Patent Office with the application. The only corroborative exhibit produced to show the purchase of such labels is an invoice dated June 24, 1960, several months after Globe's filing date.

Although the witness testified that it apparently was standard practice to mark the goods, he did not state that he personally observed the mark applied to any of the goods, nor could he recall for sure the shipping of any panels marked with either "PANELUME" or "PAN-ELUM" in response to the newspaper ad. When queried if the goods were marked, he answered "I can't say, to my recollection, whether they were or not." The later, more positive statement that the time when goods were first shipped in interstate commerce with the spelling "PANELUME" "would probably have been February of 1960 or possibly early March, 1960," fails to establish a date of use as early as February 18, 1960. We note that the witness is testifying only two years after the events in issue transpired. We agree with appellee that the testimony, characterized as it is by inconsistencies, contradictions and uncertainties, leaves considerable doubt whether Powermatics used either "PANELUME" or "PAN-ELUM" as a trademark prior to appellee's filing date.

■■ In addition to the newspaper ad and label invoice, Powermatics introduced other documentary exhibits, among which are an installation contract dated December 18, 1959, and a letter of complaint from a customer dated February 25, 1960, each mentioning the term "Panelum," and several billing invoices from an advertising agency dated December 1959, and January 1960, but none mentioning the contested trademark. Those exhibits fail to establish that "PAN-ELUM," "PANELUM" or "PANELUME" were used on the goods before February 18, 1960, it being well settled that mere advertising and documentary use of a notation apart from the goods do not constitute technical trademark use. Sears, Roebuck and Co. v. Old Colony Shoe Co., 82 F.2d 709, 23 CCPA 1039; B. R. Baker Co. v. Lebow Brothers, supra; Minnesota Mining & Mfg. Co. v. Minnesota Linseed Oil Paint Co., 229 F.2d 448, 43 CCPA 746. Nor do we find those exhibits sufficient to serve as satisfactory corroborative evidence here.

■ On this record, we are far from convinced that Powermatics has discharged its burden of proving priority of use, thus it is unnecessary to consider the question of "dormancy" or abandonment.

The decision is affirmed.

Affirmed.