59 CCPA

**The JIM DANDY COMPANY, By Change of Name From Western Grain Company, Appellant,**

v.

**MARTHA WHITE FOODS, INC., Appellee.**

**Patent Appeal No. 8662.**

United States Court of Customs and Patent Appeals.

May 11, 1972.

Edward G. Fenwick, Jr., Mason, Fenwick & Lawrence, Washington, D. C., attys. of record, for appellant.

Stanford W. Berman, Washington, D. C., atty. of record, for appellee.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and ROSENSTEIN, Judge, United States Customs Court, sitting by designation.

ROSENSTEIN, Judge.

The Jim Dandy Company (Dandy) appeals from the decision of the Trademark Trial and Appeal Board [1] awarding priority to Martha White Foods, Inc. (White) in a trademark interference proceeding between appellant's application [2] to register "THE DOG FOOD OF CHAMPIONS" superimposed on a scroll as a trademark for "Dog Food" and appellee's application [3] to register "FOOD OF CHAMPIONS" as a trademark also for "Dog Food."

Both parties have taken testimony. Inasmuch as White's application has the later filing date, it has the initial burden of proof as junior party to show it is entitled, against Dandy, to the registration it seeks. The board found White's record sufficient to establish, inter alia, that it first used its mark on dog food containers in commerce on November 13, 1964, the date alleged in its application.[4] That date is prior to either Dandy's filing date or the date it alleges in its application as its first use on the goods in commerce. Accordingly, the board found that the burden of "establishing a use prior to November 1964" had shifted to the senior party Dandy.

---

1. Reported at 162 USPQ 299 (1969), sub nom. Martha White Foods, Inc. v. Western Grain Co. Familiarity with that opinion is assumed.

2. Serial No. 240,688, filed March 10, 1966, and asserting first use on the goods in commerce on January 23, 1966.

3. Serial No. 274,284, filed June 22, 1967, and asserting first use on the goods in commerce on November 13, 1964.

4. Appellant raises no serious challenge to that finding in its brief or reasons of appeal.

There is a preliminary question, we think, of what kind of use—trademark use or otherwise—Dandy must show to satisfy its burden. The board found both evidence and an admission on Dandy's part that it first made trademark usage of its slogan by placing it on its goods in commerce in January 1966, more than a year subsequent to White's first use of its slogan as a trademark on its goods.[5] Consonant with appellant's arguments, however, the board proceeded to give consideration to the remainder of appellant's evidence which Dandy asserts establishes extensive advertising use of its slogan in various media to promote sale of its dog food. Such advertising use allegedly dates from 1955 to the time of taking testimony. After consideration of that evidence, the board stated:

> Since the slogans here involved are virtually identical in their composition and are both used on dog foods, the only question to be determined herein is that of priority of use of the slogan. In this regard, while a party may rely on advertising and promotional use of a term or slogan to show superior rights over a subsequent trademark use of a term, the prior advertising must have been of such a nature and extent that the term or slogan has become popularized in the public mind as identifying the product of the user thereof. John Wood Manufacturing Co. v. Servel, Inc., [22 CCPA 1370, 77 F.2d 946] 25 USPQ 488 (CCPA, 1935); Lever Brothers Company v. Nobio Products, Inc., [26 CCPA 1253, 103 F.2d 917] 41 USPQ 677 (CCPA, 1939); Woodmark Originals, Inc. v. Purified Down Products Corp., 157 USPQ 543 (TT&A Bd., 1968). We are firmly of the opinion that the senior party has not met this shifted burden of proof. While it may be that "DOG FOOD OF THE CHAMPIONS" was used on billboards

during the latter 1950's around Birmingham, Alabama, the record on advertising use from 1960 to 1966 is far from clear, definite or concise as to the extent of use of the slogan during this period. We can only surmise that since no real documentary evidence of advertising in magazines, newspapers and television was produced, that any use made of the slogan was minuscule in nature. Since * * * [Dandy] has failed to establish by acceptable evidence that its advertising use of its slogan had made any impact on the public mind prior to the entry of the junior party into the field with its trademark use in November 1964, we must conclude that the junior party has acquired superior rights in its slogan.

The board held White "entitled to the registration for which it has made application" and "refused" registration to Dandy.

Before us, neither party quarrels with the legal premise on which the board appears to have predicated its decision—namely, "a party may rely on *advertising and promotional use* of a term or slogan to show superior rights over a subsequent trademark use of a term" (emphasis supplied) for the purpose of establishing priority, i. e., the parties' respective *registration* rights, in a trademark interference proceeding. They ask us to determine the case on the basis of the sufficiency—or insufficiency—of the evidence adduced by Dandy to show that its advertising use of its slogan prior to White's first trademark use had made an impact on the consuming public. In particular, Dandy urges that it has acquired property rights in its slogan by virtue of said prior advertising use which are not only sufficient to *preclude* registration by the party making first trademark use of the slogan on the goods (White), but also suf-

---

5. A similar admission appears in appellant's brief here:
     * * * the Senior Party did not apply the mark sought to be registered to a

container or a package until January 23, 1966 * * *.

ficient, when coupled with its later trademark use, to entitle it to *registration* of that slogan. Appellant cites the *Wood* and *Lever* cases relied on by the board, as well as International Telephone and Telegraph Corp. v. General Instrument Corp., 152 USPQ 821 (TTAB 1967), in support of its position.

■■ We agree with the board that one's "prior adoption and use" of a term or expression, not amounting to a technical trademark use on goods in interstate commerce, may be sufficient in appropriate circumstances to *defeat* a right of registration asserted by another who has made subsequent trademark use of the same or similar term or expression on the same or similar goods in commerce.[6] Similarly, evidence of a party's "prior adoption and use" in a manner not amounting to a technical trademark use may be of significance in an interference proceeding for the purpose of determining *that* party's right of registration, depending on the weight to be accorded the evidence. In other words, it is possible for a party possessing such a "prior adoption and use" to establish its own right to register, in an interference proceeding between it and a party making first trademark use of the term or expression on goods in interstate commerce, by tacking or coupling the time period of that "prior adoption and use" onto its own date of first actual trademark use on goods in interstate commerce. See Macaulay v. Malt-Diastase Co., 55 App.D.C. 277, 4 F.2d 944 (1925); Montgomery Ward & Co. v. Sears, Roebuck & Co., 49 F.2d 842, 18 CCPA 1386 (1931); Alfred Electronics v. Alford Manufacturing Co., supra.

■ Here, of course, White, as junior party, has established trademark use earlier than its application filing date and has shown that it was in a position to register its slogan as a trademark, had it chosen to do so, as of November 13, 1964. The burden of proof thus shifted to Dandy. It was incumbent on Dandy to show at least that at the time, or shortly prior thereto, of White's established date of first trademark use, it had superior rights in the slogan, whether or not it could show a then-existing right of registration by meeting the requirements of "use in commerce" as defined in § 45 of the Lanham Act [7] and as employed in § 1 of that Act.[8]

6. That is true not only in opposition proceedings but also in interference proceedings. See, e. g., *Wood* (prior grade mark use, opposition) and *Lever* (prior advertising use, opposition), supra, as well as Coschocton Glove Co. v. Buckeye Glove Co., 24 CCPA 1338, 90 F.2d 660, 34 USPQ 64 (1937) (prior trade mark use, interference) and Alfred Electronics v. Alford Manufacturing Co., 333 F.2d 912, 51 CCPA 1533 (1964) (prior trade name use by Alford sufficient to bar valid registration to subsequent trademark user, Alfred, in an interference).

7. Section 45 (15 U.S.C. § 1127) defines "use in commerce" in pertinent part as follows:
For the purposes of this Act a mark shall be deemed to be used in commerce (a) on goods when it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto and the goods are sold or transported in commerce * * *.

8. We recognize that in West Disinfecting Co. v. Onorato, 242 F.2d 197, 44 CCPA 834 (1957), this court appears to have set a different evidentiary burden of proof which the interference party possessing the burden must meet in order to establish its right of registration:
West is an applicant seeking registration. Valtex * * * is in the position of having, *prima facie*, superior rights by virtue of an earlier filing date than West, which rights must be overcome. *Our view is that in this interference West must show that at the time when Valtex filed (assuming no earlier trademark rights to be established by Valtex) West was already in a position to register its mark, had it chosen to do so.* Under Sec. 1 of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1051, West, to have been entitled to registration *at that time*, would have had to be able to state in its application "that the mark *is in use* [emphasis in original] in commerce." In other words, a mark which is not in use can-

What effect, then, does Dandy's evidence of prior advertising use of the slogan have on White's and its own right of registration in this proceeding? Was Dandy's advertising use of the slogan in the period 1955–1964 of such a nature and extent as to be inconsistent with the averments of ownership and exclusive right to use made by White in its application to register the slogan, and sufficient to support its own similar averments?

█ In its opinion, the board carefully analyzed the evidence relating to Dandy's advertising use of its slogan, and appellant has pointed to no additional evidence of any significant nature which the board failed to consider. We need not repeat that evidence here. We agree with the board that the witness' testimony on advertising use of the slogan in 1960–1964 is far from clear and definite. In our view, the board did not err in determining that the evidence relating to the rather limited advertising use which Dandy may have made of the slogan at times in the years 1955–1964 (on a few billboards in 1955–1960, and in some trade journal, radio, newspaper and television advertising in 1960–1964) is not sufficient to defeat White's right of registration, or establish its own right to register.

The decision is affirmed.

Affirmed.

LANE, Judge (concurring).

I agree with the majority disposition of this case. It is a case which is fraught with conceptual difficulty primarily because a trademark interference brings into play in a single proceeding two distinct, but easily confused, concepts—ownership of property rights sufficient to oppose the registration of a trademark and the satisfaction of the statutory conditions for registration.

The statute affords little guidance with respect to the substantive showings and determinations which must be made in the resolution of a trademark interference. Section 16 of the Lanham Act, 15 U.S.C. § 1066, provides only that:

> Whenever application is made for the registration of a mark which so resembles a mark previously registered by another, or for the registration of which another has previously made application, as to be likely when applied to the goods or when used in connection with the services of the applicant to cause confusion or mistake or to deceive, the Commissioner may declare that an interference exists.

Since under § 7(b) of the Lanham Act, 15 U.S.C. § 1057(b), registration is prima facie evidence of ownership and registrant's exclusive right to use the registered mark, it follows that settlement of an interference proceeding can ordinarily produce no more than one registrant.[1] That registrant would be the party adjudged to have ownership of the property right in the trademark, and thus an interference is a contest to determine prior, hence superior, rights in the mark. Whether or not the prevailing party has a right to register the mark, however, engenders a different inquiry, one predicated on the conditions imposed by the statute for registration. Capacity to register is independent of relative rights, and the situation may

not be registered. * * * It is sufficient to meet the burden of proof if the junior party establishes that it was *actually making trademark use of the mark* at, or *shortly prior to, the time when the senior party commenced to use it*, as shown by the senior party's established date. [Emphasis supplied.] On reflection, we think that *West* should be regarded as fixing *one* manner by which

an interference party may establish priority and its right of registration—it is not the *exclusive* manner, as is evident from the discussion above and the cases cited.

1. This assumes that there is in fact a likelihood of confusion and that concurrent registrations are not granted.

arise in which neither party is in a position to register. See Coschocton Glove Co. v. Buckeye Glove Co., 90 F.2d 660, 24 CCPA 1338 (1937).

Prior to the declaration of an interference, each party must be able to register the mark. Trademark Rule of Practice 2.92(a). This means compliance with the statutory conditions, and there is no dispute in the present case as to the registrability of the marks in question to the respective parties aside from the priority issue. The requisite use in commerce, §§ 1 and 45, 15 U.S.C. §§ 1051 and 1127, has been shown by both White and Dandy. The inquiry shifts, therefore, to the priority issue.

As the majority notes, prior decisions of this court in opposition and interference proceedings have considered evidence of prior adoption and use, such as advertising use, not amounting to such technical trademark use as would be sufficient to establish a right to register, to be probative of prior ownership adequate to defeat another's right to register. It would seem that an interference, insofar as it is a priority contest, may properly be viewed as a consolidation of concurrent oppositions for what each party is attempting to prove is that it has an interest in the mark which is likely to be compromised if the other party is granted registration—the same ultimate legal holding an opposer seeks.

If we accept this characterization of an interference, we can readily bring to bear on an interference the concepts of use already developed in the law of oppositions. It enables us to divorce the capacity to register from the priority determination in an interference, for it is well settled, as demonstrated in the cases cited in the majority opinion, that to sustain an opposition it need not be proved that opposer is in a position to himself register the mark. Thus, the majority correctly limits the West case, and, necessarily Powermatics, Inc. v. Globe Roofing Products Co., Inc., 341 F.

2d 127, 52 CCPA 950 (1965), which followed West, since although proof of the ability to register carries with it the requisite proof of prior ownership, lack of capacity to register does not necessarily mean lack of prior ownership or lack of the right to oppose.

I agree with the majority when it concludes that:

[E]vidence of a party's "prior adoption and use" in a manner not amounting to a technical trademark use may be of significance in an interference proceeding for the purpose of determining *that* party's right of registration, depending on the weight to be accorded the evidence. In other words, it is possible for a party possessing such a "prior adoption and use" to establish its own right to register, in an interference proceeding between it and a party making first trademark use of the term or expression on goods in interstate commerce, by tacking or coupling the time period of that "prior adoption and use" onto its own date of first actual trademark use on goods in interstate commerce.

As I understand it, the majority is saying that the party with the later date of first use in commerce (party A), may, in appropriate circumstances, be entitled to register notwithstanding the earlier date of use in commerce by the other party (party B). The correctness of this proposition can be seen from the opposition model I have described. Party B is in actuality an opposer alleging that the mark sought to be registered by party A "so resembles * * * a mark or trade name *previously* used in the United States by another [party B] and not abandoned, as to be likely, when applied to the goods of the applicant [party A], to cause confusion, or to cause mistake, or to deceive * * *," [emphasis added,] to use the language of § 2(d) of the Lanham Act, 15 U.S.C. § 1052(d). However, party B is no longer in a position to maintain an opposition

once it is proved that it is party A which has previously used the mark, albeit not on goods in interstate commerce, and the earlier use in commerce of party B's mark on the goods is no bar to the registration of the mark to party A. The latter has thereby established a right to register the mark over prior use in commerce by another, and is entitled to registration if the statutory prerequisites to registration are otherwise met.

All of this may in the near future be moot in light of recent changes in the Patent Office Rules of Practice in Trademark Cases. Under the new practice effective March 1, 1972, "[a]n interference will not be declared * * * except upon petition to the Commissioner," and then, "only upon a showing of extraordinary circumstances which would result in a party being unduly prejudiced without an interference." Rule 2.91, 37 Fed.Reg. 2880 (1972). In lieu of an interference, Rule 2.91 states that "[i]n ordinary circumstances, the availability of an opposition or cancellation proceeding to the party will be deemed to remove any undue prejudice." New Rule 2.83 provides that where two pending applications are for the registration of marks, the contemporaneous use of which would be likely to cause confusion or mistake or to deceive, the application with the earliest effective date will be published for opposition. In effect, the Patent Office has apparently found that by utilizing opposition and cancellation proceedings, interferences become unnecessary. Where an interference is declared, however, the conceptual difficulties can be minimized by viewing it as separate oppositions and distinguishing ownership from registrability.

For the reasons I have stated, I agree with the majority approach to the threshold question of what prior use need be proved in this case, and I agree as well with the majority's assessment of the evidence herein. I therefore join in affirming the decision of the Trademark Trial and Appeal Board.