**SHERATON CORPORATION OF AMERICA, Appellant,**

v.

**SHEFFIELD WATCH, INC., Appellee.**

**Patent Appeal No. 8919.**

United States Court of Customs and Patent Appeals.

July 19, 1973.

Brumbaugh, Graves, Donohue & Raymond, New York City, attys. of record, for appellant. Richard G. Fuller, Jr.. Joseph D. Garon, Russell H. Falconer, New York City, John A. Finken, Washington, D. C., of counsel.

George F. Long, III, New York City, atty. of record, for appellee.

Before MARKEY, Chief Judge, RICH, BALDWIN, LANE, Judges, and ALMOND, Senior Judge.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board, 167 USPQ 248 (1970), dismissing appellant's opposition to registration of the mark SHERATON, for watches and clocks.[1] The mark as it appears in appellee's application is somewhat stylized:

---

1. Application Serial No. 233,534, filed November 29, 1965.

Opposition is primarily based on use of appellant's marks SHERATON and what the board referred to as appellant's "S" mark, shown below:

[A7635]

The pertinent facts are succinctly and accurately discussed in the published board opinion, familiarity with which is assumed.

## Opinion

In concluding that there would be no likelihood of confusion as to source, the board stated:

Opposer is principally engaged in rendering hotel, motel, and restaurant services in "SHERATON" hotels and motor inns. The many items of merchandise bearing the mark "SHERATON" are, for the most part, in-house items utilized by opposer in the operation of the hotel and motor inns, and would be generally encountered by the average person within the surroundings of the hotel or motor inn in which they are guests. And considering that the term "SHERATON" appears thereon in conjunction with the word "Hotels" or the notation "Hotels or Motor Inns", the association of "SHERATON", as used on these goods, would be with opposer's hotels and motor inns and not with the products, per se, as an indicia of origin therefor in the manner of a trademark. Likewise, persons encountering the few items sold within the hotels or by mail order or in the shops in lobbies of the hotels bearing the name "SHERATON" in the context described above will recognize these products for what they are, namely, identity or souvenir items serving primarily, if not merely, to advertise and promote "SHERATON" hotels and motor inns. Under these circumstances, if we were to take these persons outside of the controlled atmosphere of the "SHERATON" hotels and place them in different marketing and physical surroundings such as in the 5 and 10 cent stores in which applicant's watches are sold, it is not believed that they would be likely to assume that "SHERATON" watches sold in these stores originate with or are in some way associated with the "SHERATON" hotels and motor inns.

■ The board erroneously restricted its consideration of appellee's mark to the manner in which it is *presently* being marketed, i. e., in "5 and 10 cent stores." There is nothing in the appellee's application which would limit its methods of merchandising in any way, and, as appellant points out, channels of trade are subject to changes in course. See Norton Co. v. Bear Mfg. Co., 438 F. 2d 620, 58 CCPA 981 (1971); Crown Industrial Products Co. v. Crown Central Petroleum Corp., 440 F.2d 446, 58 CCPA 1095 (1971). In fact, the type of watches on which appellee uses its mark seems eminently suitable for sale in the gift shops which appellant has established are to be found in many of its hotels. If the availability of such outlets results in a reasonable likelihood of confusion, then the appellant is entitled to prevail. *Cf.* Hilton Hotels Corp. v. Golden Gate Stores, Inc., 168 USPQ 475 (TTAB 1970).

■ The board dismissed appellant's retail sales of such gift items as lighters, golf balls, etc., on the basis that these were merely "identity or souvenir items serving primarily, if not merely, to advertise and promote 'SHERATON' hotels and motor inns." While appellant implied at oral argument that these sales were to earn money and not just to advertise, there is nothing in the record concerning appellant's motive in making such sales. But even accepting that appellant's use of its marks on such items

were purely for the sake of advertising, the law is well settled that such use of a mark gives the user sufficient rights to oppose registration by a subsequent user. See Knickerbocker Toy Co. v. Faultless Starch Co., 467 F.2d 501, 59 CCPA —— (1972); Jim Dandy Co. v. Martha White Foods, Inc., 458 F.2d 1397, 59 CCPA 1016, (1972); Lever Brothers Co. v. Nobio Products, Inc., 103 F.2d 917, 26 CCPA 1253 (1939).

We also think that the board placed undue weight on ten third-party registrations placed in the record. The board especially noted that SHERATON had previously been registered for "smoker's pipes and tobacco, items of clothing, and paper products such as paper napkins, toilet paper and paper towels" alleging that these are "products that would be encompassed by opposer's broad assertion of protection." We have often said that third party registrations are of little help in determining likelihood of confusion, mistake or deception. Clairol Inc. v. Roux Laboratories, Inc., 442 F.2d 980, 58 CCPA 1170 (1971); In re Belgrade Shoe Co., 411 F.2d 1352, 56 CCPA 1298 (1969). There is no evidence herein that any of the third party marks relied on have been in use or that the public is otherwise aware of them.

Considering the fact that the marks are identical and that appellee's watches are a type of goods which would be likely to be sold in the gift shops in appellant's hotels and inns and by appellant through the mails, we are of the opinion that there would be a likelihood of confusion in the present case. In ruling that the opposition should have been sustained, we are not bestowing a "right in gross" upon appellant in its mark, as implied by the board. We are simply holding that the use of *this* mark on *these* goods, in view of all the circumstances brought to light in this record, is likely to cause confusion, to cause mistake, or to deceive, within the meaning of the statute.

The decision of the board is reversed.

Reversed.