OLD SWISS HOUSE, INC., Appellant,

v.

ANHEUSER–BUSCH, INC., Appellee.

Appeal No. 77–571.

United States Court of Customs and Patent Appeals.

Feb. 16, 1978.

Rehearing Denied April 13, 1978.

Robert A. Felsman, Wofford, Felsman, Fails & Zobal, Fort Worth, Tex., attorneys of record, for appellant; Dennison, Dennison, Meserole & Pollack, Arlington, Va., of counsel.

Roy A. Lieder, Gravely, Lieder & Woodruff, St. Louis, Mo., attorneys of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

LANE, Judge.

Old Swiss House, Inc. (petitioner) appeals from the decision of the Trademark Trial and Appeal Board (board), reported at 193 USPQ 502 (1976), in cancellation proceeding No. 10,843, denying the petition to cancel the registration of The Old Swiss House, Reg. No. 937,247, issued July 4, 1972, to Anheuser-Busch, Inc. (registrant), for restaurant services. We reverse.

*Background*

In its opinion, familiarity with which will be assumed, the board gave a detailed accounting of the record, the accuracy of which is not in dispute.

Petitioner, a Texas corporation, renders restaurant services in Fort Worth, Texas, under the tradename Old Swiss House. It alleges that, through its predecessors in in-terest, it has been so using this term since May 18, 1964. Registrant owns a restaurant called The Old Swiss House, located in Busch Gardens in Tampa, Florida. The restaurant opened for business in September, 1964, which is the date of first use stated in the registration sought to be cancelled.

In the petition for cancellation, filed on March 13, 1975, it is alleged, inter alia: that petitioner's use of Old Swiss House was prior to registrant's stated date of first use of The Old Swiss House; and that the registered mark so resembles petitioner's mark as to be likely, when applied to restaurant services, to cause confusion, or to cause mistake or to deceive. In its answer, registrant admitted that the two marks would be confusingly similar if used in connection with the same services in the same geographic area; however, the remaining allegations in the petition were denied.

The board, on the record before it (pleadings, registrant's registration file, and testimony on behalf of each party), found that petitioner could rely on the first use date (May 18, 1964) of its predecessors in interest (the Kaufmanns); nonetheless, because of registrant's use of its mark in publicizing its restaurant prior to May 18, 1964, the board concluded that registrant's rights in The Old Swiss House were prior, and thus superior, to the rights of petitioner in Old Swiss House.

OPINION

The ultimate question presented by this appeal is that of priority of use between petitioner and registrant; that there would be likelihood of confusion if the two terms were used for restaurant services in the same geographic area is not in dispute.

The resolution of the priority question requires two determinations: (1) whether petitioner is entitled to rely on the first use date of its predecessors in interest; and, if so, (2) whether registrant's advertising use of its mark in publicizing its restaurant established prior, and thus superior, rights.

### 1. Petitioner's Reliance on Kaufmanns' First Use Date

■ We agree with the board that petitioner is entitled to rely on the first use date (May 18, 1964) of its predecessors in interest. The board, 193 USPQ at 503–04, discusses the evidence of record; we need not repeat that discussion here. Suffice it to say that the record, as a whole, supports the following: that the Old Swiss House restaurant was opened as a proprietorship, on May 18, 1964, by the Kaufmanns; that the articles of incorporation of petitioner were signed on July 3, 1969, the same day on which the Kaufmanns assigned the assets of their restaurant business, including the mark Old Swiss House, to petitioner; that the Kaufmanns, in consideration for their assignment, became the sole owners of petitioner; that on July 16, 1969, petitioner's certificate of incorporation issued; and that on November 10, 1975, the date on which the depositions of the Kaufmanns were taken, they executed a written assignment to petitioner, nunc pro tunc, as of July 3, 1969.

Registrant asserts that petitioner is not entitled to rely on the Kaufmanns' first use date; it argues, inter alia, that the July 3, 1969 assignment was ineffective since petitioner's certificate of incorporation did not issue until July 16, 1969, and that this assignment, therefore, constituted an abandonment of the mark.

Considering that the assignment by the Kaufmanns was purely local in nature and that it involved the transfer of their common law rights in Old Swiss House (no federal registration was involved), we think it proper to look to state law, viz., the law of Texas, cf. 6A C.J.S. Assignments § 43 (1975), to determine the single, ancillary issue of whether the assignment should be given effect. Compare De Sylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956), with United States v. Little Lake Misere Land Co., 412 U.S. 580, 93 S.Ct. 2389, 37 L.Ed.2d 187 (1973). See also Mishkin, The Variousness of "Federal Law": Competence and Discretion in The Choice of National and State Rules For Decision, 105 U.Pa.L.Rev. 797 (1957); Prince Dog & Cat Food Co. v. Central Nebraska Packing Co., 305 F.2d 904, 49 CCPA 1328, 134 USPQ 366 (1962) (state law applied to assignment of state registered mark).

While it is true that the corporate existence of petitioner did not begin until the issuance of its certificate of incorporation, see V.A.T.S. Bus.Corp.Act, Art. 3.04; 14 Tex.Jur.2d Corporations §§ 48, 50 (1960), we see no reason why this should prevent the assignment from being given effect. The Kaufmanns received consideration for their assignment to petitioner, viz., the acquisition of ownership rights in petitioner (ostensibly, by the issuance of stock to them). In turn, petitioner, having given value, acquired ownership rights in the restaurant and mark as of July 3, 1969, which rights, if the need had arisen, could have been enforced by petitioner upon the birth of its legal existence. Cf. Payne v. Bracken, 131 Tex. 394, 115 S.W.2d 903 (Tex.Com.App. 1938), where a conveyance of certain mineral interests to a corporation was given effect notwithstanding the fact that it was made prior to the filing of the corporation's charter, i. e., prior to the time the corporation came into existence; since the opinion of the commission of appeals [1] was adopted by the supreme court of Texas, it became the opinion of that court, 15 Tex.Jur.2d Courts § 141 (1960). Even if we assume that the assignment by the Kaufmanns was oral, the result would not change; an oral assignment can be proven by either direct or circumstantial evidence. 6 Tex.Jur.2d Assignments § 3 (1959). Registrant has merely made the bald assertion that since the assignment was made prior to the issuance of petitioner's certificate of incorporation, it should not be given effect; no authority in support of its position has been cited.

---

1. The commission of appeals was abolished by a Texas constitutional amendment in 1945. 15 Tex.Jur.2d Courts § 141 (1960).

■ Moreover, the assertion that the mark was abandoned is particularly inappropriate where, as here, there is neither evidence of intent to abandon nor a period of nonuse. See 87 C.J.S. Trade-Marks, Trade-Names, And Unfair Competition § 182 (1954); 1 J. T. McCarthy, Trademarks and Unfair Competition §§ 17.2, 17.3 (1973).

We have considered registrant's other arguments why petitioner should not be entitled to the first use date of its predecessors in interest and find them to be equally lacking in merit. In particular, the assertion that there is no evidence of how Nancy Kaufmann acquired a half interest in the mark is readily disposed of by noting that Texas has a community property system. 30 Tex.Jur.2d *Husband and Wife* § 54 (1962). Further, there is no evidence that the Kaufmanns assigned any of their rights in the mark and restaurant to any entity other than petitioner.

## 2. *Registrant's Advertising Use*

■ Although petitioner may rely on the May 18, 1964, use date, this is not dispositive of who has superior rights. Registrant argues that even assuming, arguendo, petitioner is entitled to such use date, registrant's rights are superior by virtue of its prior use of the mark in publicizing its still unopened restaurant. The board, 193 USPQ at 506, in agreeing with registrant, concluded:

[W]e are persuaded that respondent's use of the mark [THE] 'OLD SWISS HOUSE' in connection with the publicizing of its restaurant prior to May 18, 1964 (petitioner's date of first use) was sufficient to create an association in the public mind of such restaurant and mark with respondent. Accordingly, we conclude that respondent's rights in its registered mark are prior and thus superior to the rights established by petitioner in its similar mark.

The board presumed, as do the parties, that one may rely on advertising use of a term during the construction of a service facility, but prior to the actual rendering of services under the term, for the purpose of establishing superior rights against the user of the same or similar term on the same or similar services. We will assume, without deciding, that this presumption is correct; we cannot agree with the board that the evidence of record is sufficient to warrant a finding of superior rights in registrant.

The evidence upon which the board based its decision is set forth at 193 USPQ at 504–05. It consists of 12 articles, each published only once, which appeared in various newspapers and trade journals between December 27, 1963, and April 11, 1964, and a single speech, on April 22, 1964, by one of registrant's vice-presidents at a shareholders' meeting. Registrant has pointed to no additional evidence of any significance upon which it may rely; notwithstanding registrant's assertions to the contrary, there is no evidence that the aforementioned speech was printed and distributed to stockholders, or that a sign, which mentioned the name The Old Swiss House, was on the construction site at Busch Gardens. The articles mentioned above were, in effect, press releases; in all but one, the mark, The Old Swiss House, was buried in the body of the articles. This, in our view, is not the type of public exposure of a mark that would be expected to have any significant impact on the purchasing public. *Cf. Jim Dandy Co. v. Martha White Foods, Inc.*, 458 F.2d 1397, 59 CCPA 1016, 173 USPQ 673 (1972); *Steer Inn Systems, Inc. v. Laughner's Drive-In, Inc.*, 405 F.2d 1401, 56 CCPA 911, 160 USPQ 626 (1969).

Since petitioner may rely on the May 18, 1964, use date of its predecessors in interest, and since registrant may only rely on its September, 1964, use date, petitioner's rights in Old Swiss House are prior, and thus superior to registrant's rights in The Old Swiss House.

## 3. Motion to Tax Costs

Petitioner has moved to assess printing costs for the portions of the transcript requested by registrant. These can be divided into two groups: (1) those portions relating to petitioner's right to rely on the Kaufmanns' first use date; and (2) those portions relating to registrant's use of its mark.

The board decided in favor of petitioner with respect to its right to rely on the Kaufmanns' first use date; registrant, not petitioner, is the party that would have an interest in raising the issue on appeal. Therefore, the cost of those portions of the transcript relating to this issue is to be paid by registrant.[2] *Meitzner v. Mindick*, 549 F.2d 775, 193 USPQ 17 (Cust. & Pat.App. 1977), *cert. denied,* —— U.S. ——, 98 S.Ct. 171, 54 L.Ed.2d 124 (1977); *Myers v. Feigelman*, 455 F.2d 596, 59 CCPA 834, 172 USPQ 580 (1972).

With respect to those portions of the transcript relating to registrant's use of the mark, which issue was raised by petitioner on appeal, we view them as being reasonably necessary for the court to make a determination on the issue; consequently, petitioner should bear the cost for those portions of the transcript. *Meitzner v. Mindick*, supra. Accordingly, petitioner's motion to tax costs to registrant is granted with respect to group (1) and denied with respect to group (2).

Pursuant to the reasons set forth above, the decision of the board in denying the petition for cancellation is *reversed*.

*REVERSED.*

2. Items 1 and 2 of the listing given in the Supplemental Praecipe for Transcript of Record, filed with the court on March 11, 1977.