**MALCOLM NICOL & CO., INC., Appellant,**

v.

**WITCO CORPORATION, Appellee.**

**89–1070.**

United States Court of Appeals, Federal Circuit.

Aug. 1, 1989.

---

Stuart J. Friedman, Sixbey, Friedman, Leedom & Ferguson, Falls Church, Va., argued, for appellant with him on the brief was Daniel W. Sixbey.

Robert E. Wagner, Wallenstein, Wagner & Hattis, Ltd., Chicago, Ill., argued for appellee with him on the brief were Sidney Wallenstein and Alan L. Barry.

Before RICH, Circuit Judge,
MILLER, Senior Circuit Judge, and
ARCHER, Circuit Judge.

JACK R. MILLER, Senior Circuit Judge.

This cancellation proceeding was initiated by Witco Corporation ("Witco") against Malcolm Nicol & Co., Inc.'s ("Nicol's") U.S. trademark registration No. 1,311,927, dated January 1, 1985, for the trademark BRITOL as applied to mineral oil in International Class 4. Witco's petition is grounded on its alleged use of BRITOL to identify a mineral oil before Nicol's application date of March 15, 1984.[1] In a decision dated September 1, 1988, the Trademark Trial and Appeal Board (TTAB) granted Witco's petition for cancellation[2] on the basis that Witco had established priority and likelihood of confusion. We affirm.

The TTAB said that the primary issue is whether Witco established prior rights in BRITOL sufficient to support cancellation of Nicol's registration. It considered several exhibits which it said "would not, by themselves, establish [Witco's] use of the term in question in such a way as to create an association in the minds of prospective customers between [Witco] and BRITOL mineral oil." It then turned to the remaining exhibits, which it declared—

> do constitute evidence that Witco used the term in a way that informed prospective purchasers that Witco was selling "BRITOL" branch mineral oil.

The TTAB listed product guides (distributed to the public) and annual editions of Chemical Week Buyers' Guide showing at least fourteen years when Witco was identified in a major trade publication as the source of BRITOL mineral oil. The TTAB explained:

> Even if no actual sales or deliveries of "BRITOL" oil by [Witco] could be established, the promotional literature distributed to its customers and the listings in all the buyers' guide editions of the trade publication might well establish [Witco's] rights, but [Witco] can go further than that with direct testimony and evidence.

It then cites testimony of two long time officers (Dr. Lawrence B. Nelson and Mr. Dennis Andreuzzi) to the effect that they had personal knowledge of Witco selling mineral oil under the term BRITOL. In summary, concludes the TTAB, "petitioner has established prior rights in "BRITOL" as a mark for mineral oil based on the testimony of Dr. Nelson and Mr. Andreuzzi. Their testimony is corroborated by some of the documentary evidence."[3]

This court's predecessor, in a case involving registration priority, has said that "mere advertising and documentary use apart from the goods do not constitute

---

**1.** Witco acquired Sonneborn Chemical and Refining Company in 1960 and has alleged use of BRITOL to identify mineral oil from that date to and beyond the date of Nicol's trademark registration of January 1, 1985.

**2.** On amended pleadings, the TTAB found that Nicol's registration was not fraudulently procured, and that finding is not contested in the instant appeal. The TTAB also determined that confusion is likely from the parties' contemporaneous use of the same mark on the same goods—a view that we share.

**3.** The Board also cited an invoice showing that "BRITOL" brand oil was actually shipped to a customer by Witco and observed: "The mere fact that it was only a free sample does not fatally flaw this as use upon which petitioner can base a claim of priority. The word identified the goods as coming from [Witco]. More than this is not required." Nicol correctly points out that the invoice was dated after Nicol's application date but we agree with Witco's argument that the invoice was unnecessary to the Board's decision.

technical trademark use." *Powermatics, Inc. v. Globe Roofing Products Co.,* 341 F.2d 127, 130, 144 U.S.P.Q. 430, 432 (CCPA 1965). *See* 2 J. McCarthy, *Trademarks and Unfair Competition* § 16:10 (1984). At the same time, it has been pointed out that in relying on § 2(d) of the Lanham Act as a ground of *opposition,* it is not necessary that an opposer prove prior use of a similar term in a strict trademark sense. Thus:

> In an opposition founded on § 2(d), opposer must prove that it has proprietary rights in the term it relies upon to prove likelihood of confusion. The proof could consist of ownership of a registration, prior use of an unregistered mark, prior use in advertising, or as a trade name, or any other type of use which has resulted in establishing a trade identity....

> Thus, even prior use by opposer of the term as a trade name ... or use in advertising analogous to trademark use, may be sufficient to preclude registration of that term to a subsequent user. Use "analogous" to trademark use means use of a nature and extent such as to create an association of the term with the user's goods. Examples of use analogous to trademark use to establish priority under § 2(d) include prior use of a term: in advertising brochures, in catalogues and newspapers, and in press releases and trade publications.

> The effect of § 2(d) may therefore be that an opposer can prevent registration of a mark even though the opposer itself is not entitled to federal registration because it has never used the term as an affixed "trademark."

(Footnotes omitted). 1 J. McCarthy, *Trademarks and Unfair Competition* § 20:4 at 1023–26 (1984), citing, *inter alia, Jim Dandy Co. v. Martha White Foods, Inc.,* 458 F.2d 1397, 1399, 173 USPQ 673, 674 (CCPA 1972) ("while a party may rely on advertising and promotional use of a term or slogan to show superior rights over a subsequent trademark use of a term, the prior advertising must have been of such nature and extent that the term or slogan has become popularized in the public mind"). *See also Lever Brothers Co. v. Nobio Products, Inc.,* 103 F.2d 917, 919, 41 USPQ 677, 678 (CCPA 1939) ("It clearly appears from the record that, although appellant never used the letters 'B.O.' or the words 'body odor' as a trademark or otherwise on its goods it has so extensively advertised its 'Lifebuoy' soap as a preventative of 'B.O.' that it has become popularized and identified in the mind of the purchasing public by the term 'B.O.', and that such term clearly indicates appellant's product to the purchasing public. Accordingly, we are of the opinion that the term 'B.O.' serves to indicate origin in appellant, and that its use is analogous to that of a trade mark.")

In this case, there are identical terms ("BRITOL") applied to mineral oil, with priority of Witco shown by a combination of substantial deposition and corroborating documentary evidence. Apparently, that evidence prompted the Board to determine that Witco used "BRITOL" in a way that created in the minds of people the necessary association between "BRITOL" and the Witco product.[4] In that regard, it appears that most of Witco's advertising was distributed to the public generally, well-prior to Nicol's use of the term BRITOL. *Compare Old Swiss House, Inc. v. Anheuser–Busch, Inc.,* 569 F.2d 1130, 1133, 196 USPQ 808, 810 (CCPA 1978), where the court said:

> The evidence upon which the board based its decision ... consists of 12 articles, each published only once, which appeared in various newspapers and trade journals between December 27, 1963, and April 11, 1964, and a single speech, on April 22, 1964, by one of registrant's vice presidents at a share-holders' meeting. Registrant has pointed to no additional evidence of any significance upon which it may rely.... The articles mentioned above were, in effect, press releases; in

---

**4.** That key determination is one of fact, warranting a clearly erroneous standard of review. *Cf. Petersen Mfg. Co. v. Central Purchasing, Inc.,* 740 F.2d 1541, 1550, 222 USPQ 562, 569 (Fed.

Cir.1984) ("acquired distinctiveness" is a question of fact); 1 J. McCarthy, *supra.* 15.10 at 683 ("whether or not a symbol has acquired secondary meaning is a question of fact").

all but one, the mark, The Old Swiss House, was buried in the body of the articles. This, in our view, is not the type of public exposure of a mark that would be expected to have any significant impact on the purchasing public. *See also Steer Inn Sys., Inc. v. Laughner's Drive–In, Inc.,* 405 F.2d 1401, 160 USPQ 626 (CCPA 1969).

In view of the foregoing, the decision of the TTAB granting Witco's petition to cancel Nicol's trademark registration is affirmed.

AFFIRMED.

ARCHER, Circuit Judge, dissenting.

Witco's petition for cancellation is based on its alleged use of BRITOL to identify a mineral oil before Nicol's application date of March 15, 1984. The majority correctly recognizes that "in relying on § 2(d) of the Lanham Act as a ground of opposition, it is not necessary that an opposer prove prior use of a similar term in a trademark sense." The opposer or petitioner has the burden, however, to show that the use was such that it created "public exposure of [the] mark that would be expected to have [a] significant impact on the purchasing public." *Old Swiss House, Inc. v. Anheuser–Busch, Inc.,* 569 F.2d 1130, 1133, 196 USPQ 808, 810 (CCPA 1978). *Accord Jim Dandy Co. v. Martha White Foods, Inc.,* 458 F.2d 1397, 1400–01, 173 USPQ 673, 675–76 (CCPA 1972); *Era Corp. v. Electronic Realty Assoc., Inc.,* 211 USPQ 734, 745 (TTAB 1981) (use must be "of such a nature and extent as to create an association of [the] term with a single source."). As Professor McCarthy explains, the prior use of the mark must be "analogous to trademark use.... Use 'analogous' to trademark use means use of a nature and extent such as to create an association of

the term with the user's goods." 1 J. McCarthy, *Trademarks and Unfair Competition* § 20:4 at 1025–26 (1984).

Witco alleges "14 years of ... continuous use of BRITOL." The only documentary evidence relied on by the Board to show public use of the mark BRITOL by Witco consists of "product guides" from 1972 and 1977, which list BRITOL as a mineral oil, annual editions of the "Buyers' Guide Issue" of Chemical Week, and a 1984 "invoice" for a complimentary sample (quart) of "BRITOL." The product guides and Buyers' Guide Issues of Chemical Week are both dictionary-type listings of myriad products combined with associated names.[1]

The Board erred in relying on the 1984 invoice. This invoice is dated over seven months after Nicol's trademark application and therefore cannot be relied upon to show priority.[2]

Two Witco vice presidents testified before the Board that Witco used the BRITOL mark in association with mineral oil for well over 20 years. Witco, however, failed to produce even a single invoice, advertisement, customer order, label or container, piece of correspondence or other document bearing the mark to support these statements.[3]

I find this case difficult to distinguish from *Old Swiss House, Inc.* where the court said prior use was not sufficient to preclude registration where

> [t]he evidence [of prior use consisted] of 12 articles ... which appeared in various newspapers and trade journals [over a 4 month period], and a single speech ... by one of registrant's vice-presidents at a shareholders' meeting.... The articles ... were, in effect, press releases; in all but one, the mark ... was buried in the body of the articles.

---

1. For example, in the 1982 edition of the Buyer's Guide Issue of Chemical Week, BRITOL is listed on a page with two hundred and twenty-nine other product names. The Buyer's Guide Issue lists thousands of products of substantially every producer of chemical products.

2. The majority does not comment the Board's apparent reliance on this invoice as necessary to its prior use holding. In its opinion the Board

explained "[e]ven if no actual sales or deliveries of "BRITOL" oil by petitioner could be established" the documentary evidence *"might"* well establish [Witco's] rights." (Emphasis added.)

3. It is also noted that two other *former* employees testified that Witco never used BRITOL as a trademark for mineral oil.

*Old Swiss House, Inc.*, 569 F.2d at 1133, 196 USPQ at 810. *Accord Jim Dandy Co.*, 458 F.2d at 1401, 173 USPQ at 676 (evidence of prior use insufficient in view of "the rather limited advertising use ... made ... at times in the years 1955–1964 (on a few billboards in 1955–1960, and in some trade journal, radio, newspaper and television advertising in 1960–1964)").

I would therefore hold that the Board erred in relying on the 1984 invoice and that the Board was clearly erroneous in finding that the use of BRITOL by Witco was sufficient to "create an association of the term with the user's goods." McCarthy, *supra*, at 1025–26 or create "public exposure of [the] mark that would be expected to have [a] significant impact on the purchasing public." *Old Swiss House, Inc.*, 569 F.2d at 1133, 196 USPQ at 810.

Accordingly, I would reverse.