**PETERSEN MANUFACTURING CO., INC., Appellant,**

v.

**CENTRAL PURCHASING, INC., Appellee.**

**Appeal No. 83–1006.**

United States Court of Appeals, Federal Circuit.

July 3, 1984.

Howard N. Aronson and James E. Siegel, Scarsdale, N.Y., argued for appellant. With them on the brief were Elia Weinbach, Los Angeles, Cal., and Susan Friedman.

William H. Pavitt, Jr., Los Angeles, Cal., argued for appellee.

NIES, Circuit Judge.

This appeal is from the grant of summary judgment by the United States District Court of the Central District of California (Real, C.J.), entered April 18, 1983, dismissing a complaint by Petersen Manufacturing Co. for patent infringement and unfair competition, and from an award of attorney fees to the accused infringer, Central Purchasing, Inc. Petersen asserts that summary judgment was improvidently granted in that genuine issues of material fact remain to be tried. Certain affidavits submitted by Petersen are claimed to raise factual issues with regard to the validity of the design patent in suit, and with respect to the asserted claim of unfair competition based on the public's identification of the design with Petersen.

From a review of the record, we conclude that summary judgment was proper and affirm the judgment.

However, the award of attorney fees is vacated because the basis for the award is not apparent in the record, and we are thus unable to review whether the award constitutes an abuse of discretion.

*Background*

The patent in suit, U.S. Patent No. Des. 261,096,[1] is directed to the following design for a hand tool:

FIG. 2

The assignee of the patent, Petersen, has for many years sold a series of locking plier-type wrenches and other hand tools under the trademark VISE–GRIP, part of the full line of which is shown below:

The two tools on the right embody the design of the patent in suit. As is readily apparent, all of the tools utilize essentially the same handle which appears in a number of now expired mechanical patents obtained by Petersen more than one year prior to the filing of the application for the subject patent.[2]

During the prosecution of the design patent application, which was filed on September 18, 1978, counsel for Petersen provided the examiner with the following prior art:

(1) U.S. Patent No. 2,563,267, (owned by Petersen), which contains the following drawing:

---

1. 35 U.S.C. § 171 provides:

 Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

 The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided.

2. Petersen misses the point in its argument that the advertisement from which this lineup is taken is not prior art. Admittedly, the tools themselves are prior art. The advertisement is used for convenience in showing these designs. Other advertisements are pertinent to the claim of unfair competition.

(2) The LeverWrench device, a competing locking pliers-type wrench with elongated jaws:

(3) Various tool catalogues showing a variety of non-locking pliers with long nose jaws, e.g.:

In addition, the examiner's search disclosed a patent to Schroeder, U.S. Patent No. 3,585,704, for a pliers-type wrench which admittedly shows substantially the same handle utilized by Petersen:

FIG. 2

Following Petersen's response to an initial rejection under 35 U.S.C. § 103 based on Schroeder '704 and the LeverWrench tool, the examiner allowed the application and the patent issued on October 6, 1981.[3]

Petersen introduced the six-inch version of its hand tool to the market in March of 1980, followed by the nine inch model in 1982. Without question, Petersen's new tool has enjoyed substantial commercial success. The new tool is sold singly and as part of a set with other Petersen locking hand tools.

Aware that an affiliate of Central, Harbor Freight Salvage Co., was marketing a similar device, Petersen, on February 26, 1982, sent a "cease-and-desist" letter to Harbor Freight, charging infringement of the '096 patent. Counsel for Central responded to the letter on March 15, 1982, asserting, *inter alia*, that the patent appeared to represent an effort to protect functional features of the tool under the guise of a design patent. No further correspondence was exchanged by the parties.

On November 2, 1982, Petersen filed the present action for patent infringement and for unfair competition, under federal and state law, the latter claim being premised on a theory that Central was using a false designation of origin by selling tools of a patented design which the public identified with Petersen. It must be noted that Petersen does not assert that the handle design identifies its *line* of tools, but rather argues that certain details of the jaws portion of the new tool are ornamental and that the shape of the long nose tool has

3. The new tool is also the subject of pending

acquired distinctiveness, or secondary meaning, indicating the source of the tool to the public.

Based on testimony and exhibits obtained through discovery of Petersen's officers, and on the prosecution history of the patent in suit, Central moved for summary judgment asserting:

(a) The patent in suit was invalid because (1) the design was not ornamental (as required by 35 U.S.C. § 171), being dictated by functional considerations; (2) the design was obvious (within the meaning of 35 U.S.C. § 103) in view of Petersen's own earlier tool design and the LeverWrench tool; and (3) the patent was fraudulently procured for failure to disclose Petersen's entire line of tools;

(b) The unfair competition claims were meritless under *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661, 140 USPQ 524 (1964); and for the reason that no secondary meaning had been, or could be, established in Petersen's tool design; and

(c) The case was "exceptional" within the meaning of 35 U.S.C. § 285, warranting an award of attorney fees, because of inequitable conduct in procuring and asserting the patent.

In opposing the motion, Petersen filed eight affidavits, including four by "experts" attesting to the nonobviousness, non-functionality, and aesthetic appearance of the design.

After hearing, the district court granted the motion for summary judgment; declared U.S. Patent No. Des. 261,096 invalid and unenforceable; dismissed the complaint in its entirety; and granted Central an award of attorney fees. Petersen appeals that judgment. Our jurisdiction is found in 28 U.S.C. § 1295(a)(1).

I

*Analysis*

The Federal Rules of Civil Procedure pertinent to Central's motion for summary judgment provide:

Rule 56(b): A party against whom a claim, counterclaim, or cross-claim is as-

utility patent applications.

serted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

(c) ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

\* \* \* \* \* \*

(e) ... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations ... of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

As this court has repeatedly held, summary judgment is as appropriate in a patent case as in any other type of case, where no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law. *See,* e.g., *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 835, 221 USPQ 561, 564 (Fed.Cir.1984); *Union Carbide Corp. v. American Can Co.,* 724 F.2d 1567, 1571, 220 USPQ 584, 587 (Fed.Cir.1984); *D.L. Auld Co. v. Chroma Graphics Corp.,* 714 F.2d 1144, 1147, 219 USPQ 13, 15 (Fed.Cir. 1983); *Chore-Time Equipment, Inc. v. Cumberland Corp.,* 713 F.2d 774, 778–79, 218 USPQ 673, 675 (Fed.Cir.1983). Similarly, summary judgment may be granted on a meritless claim of unfair competition. *See,* J. Gilson, *Trademark Protection and Practice,* § 8.10 (1982) and cases cited therein. In deciding such motions, all doubt respecting the presence or absence of factual issues and all inferences of fact must be resolved in favor of the one against whom summary judgment is sought. *Union Carbide v. American Can Co.,* 724 F.2d at 1571, 220 USPQ at 588.

■ As an initial matter, Petersen argues that the case must be remanded to the district court because of the failure of the court to issue specific findings of fact and conclusions of law. According to Petersen, a district court *must,* in invalidating a patent, set forth the factual basis for its conclusion. For example, to invalidate for obviousness under 35 U.S.C. § 103 [4], each of the inquiries delineated in *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966) must be discussed.

Fed.R.Civ.P. 52(a) provides that a "court shall find the facts specially and state separately its conclusions of law thereon." However, Rule 52(a) continues, "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56." Only in connection with the grant of partial summary judgment must the court specify in an order "the facts that appear without substantial controversy". Fed.R.Civ.P. 56(d).

The district court cannot, therefore, be reversed simply for failing to provide a detailed analysis, although we agree with Petersen that a full statement by the court of the basis for its decision facilitates appellate review and may be necessary in some circumstances. *Accord, Fromberg, Inc. v. Gross Mfg. Co.,* 328 F.2d 803, 806 (9th Cir.1964). However, in this case the issues are not complicated, and this court is fully able to determine the correctness of the decision by a review of the record provided by the parties.[5]

---

**4.** 35 U.S.C. § 103 provides:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

**5.** Petersen also asserts that it was error to grant summary judgment prior to the completion of its discovery and that Central offered *no* evi-

## II

### *Patent Validity*

#### A.

Central challenged the validity of the '096 patent on several separate grounds as indicated above. Since we agree that summary judgment was appropriate because of the obviousness of the design within the meaning of § 103, we limit our discussion to that ground and do not address the issues of functionality or inequitable conduct in connection with validity.

Petersen maintains that genuine issues of material fact remained to be tried on the issue of the obviousness of the design. Yet counsel for Petersen has failed to identify, either in its briefs or in response to extensive questioning at oral argument, a single issue of a factual nature. With respect to the three initial inquiries underlying the conclusion as to obviousness, as enunciated in *Graham v. John Deere Co.*, 383 U.S. at 17, 86 S.Ct. at 693, 148 USPQ at 467, there is little to discuss.

It is undisputed that the scope and content of the prior art consists of the references contained in the file of the patent in issue, all of the locking hand tools patented and/or marketed by Petersen more than a year prior to the filing of the application for the patent in suit, the LeverWrench plier-type wrench which also has elongated jaws, and non-locking long nose pliers of various designs.

It is also undisputed that the difference between the design in issue and the prior art resides solely in certain features of the jaws portion of the tool, the handle design admittedly being taken from the prior art and used by others since 1965.

Finally, no issue is raised with respect to the *level* of skill of a designer in the art of tool design.

Although Petersen presents its argument in several variations, the basic premise is that the district court did not follow the requirements set forth in *In re Nalbandian*, 661 F.2d 1214, 211 USPQ 782 (CCPA 1981) for determining the obviousness of a design.

The *Nalbandian* decision defines a person of ordinary skill in the art with respect to designs as an ordinary designer of articles of the type at issue. Petersen contends that *Nalbandian* disqualifies a trial judge from deciding that a design would have been obvious without expert testimony in support of that conclusion. Since Petersen submitted a number of expert's affidavits and Central presented none, Central cannot possibly prevail under Petersen's interpretation of *Nalbandian*. However, as discussed below, *Nalbandian* does not enunciate such a rule.

Prior to *Nalbandian*, the Court of Customs and Patent Appeals had assessed the obviousness of a design by the eyes of an "ordinary observer". *Nalbandian* overruled that precedent, holding that the person of skill in the art within the meaning of 35 U.S.C. § 103 is the ordinary designer rather than the ordinary observer or reasonable man.

 Contrary to Petersen's reading, *Nalbandian* did not convert the issue of obviousness of a design into a fact question resolvable only by resort to testimony of designers. The discussion of opinion testimony in *Nalbandian* was in the context of *ex parte* prosecution. Allowing the presentation of expert testimony during prosecution gives the applicant an additional means for persuading an examiner to withdraw a rejection, but *Nalbandian* did not make resolution of the issue wholly dependent on an expert's opinion even in *ex parte* prosecution. In civil litigation involving a design, an expert's testimony is most helpful, as in the determination of obviousness with respect to any other type of invention, to explain the technology, the scope and content of the prior art, the differences between the prior art and the invention, and the level of skill in the art.

The *Nalbandian* standard does not and could not prohibit a district court from making its own conclusion on the legal

dence to support the motion. These arguments are wholly meritless and are mentioned only to

indicate they were considered.

issue of obviousness. As in other decisions on obviousness, *Nalbandian* holds that the trial judge must view the matter from the position of one of ordinary skill in the art. Opinion testimony by experts concluding that an invention would or would not have been obvious may influence the court's decision, but conflicting opinions on a legal issue *vel non* raise no issue of fact. *Auld v. Chroma Graphics*, 714 F.2d at 1151, 219 USPQ at 18. Nor is the court's conclusion on obviousness an adverse inference of fact. *Cf. Barmag Barmer v. Murata*, 731 F.2d at 837, 221 USPQ at 565. The issue of obviousness of a design is an issue of law and the *Nalbandian* decision does not hold otherwise. Thus, *Nalbandian* did not require Central to submit an expert's opinion on obviousness and did not preclude the grant of summary judgment against Petersen, despite the conclusions of Petersen's experts to the contrary.

### B.

With respect to the merits, that is, whether the subject tool design would have been obvious to an ordinary designer from the prior art, Petersen's brief is entirely silent except for references to the *conclusory* statements of its experts. However, we have reviewed the affidavits for the specific details of their analyses.

First, it must be noted that the prior art Petersen and Schroeder '704 handles are admitted to have the same, or substantially the same, appearance as the design in suit. The affiants point to the curving bottom edge of the lower jaw, the shape of the opening when the jaws are closed, the recess for the wire cutter, and the shape of a raised portion of metal surrounding the teeth as non-obvious ornamental features of the design. One affiant described the additional metal surrounding the teeth as "a necessity to make up for the lack of strength and structure that results from the void created by fashioning the arc [in the lower jaw]." Only the semi-circular ending of the raised portion is stated to be

entirely ornamental in this expert's opinion. Another affiant asserted that the long nose Petersen tool was not "a normal extension of the Petersen line" but should be viewed as "a new category of locking tools/pliers." [6] Others opined that *the combination* of a long nose plier with a locking handle would not have been obvious. Several attested to the great commercial success of the new Petersen tool and, as a matter of opinion, attributed the success to its ornamental design.

■ The obviousness of a design must be evaluated as a whole. *In re Lamb*, 286 F.2d 610, 128 USPQ 539 (CCPA 1961). However, the evaluation of the whole necessarily involves consideration of what are indicated to be the distinguishing features of the claimed design. *Cf. Graham v. John Deere*, 383 U.S. at 34, 86 S.Ct. at 702, 148 USPQ at 473.

■ Admittedly, the design in suit differs from Petersen's entire line of locking tools, as well as its expired mechanical patents, only in the jaws portion, which, like the jaws portion of any long nosed pliers, has been designed to enable the tool to access tighter work spaces. Except for changes in the jaws, the tool represents no departure from the design of other Petersen tools. Necessarily the new tool must have a different jaws configuration from others in the line in order to perform its function in a limited space. Nevertheless, even implements which differ substantially in structure, such as forks differ from spoons, may embody the same basic ornamental design characteristics. *In re Lamb*, 286 F.2d at 611–12, 128 USPQ at 540.

None of Petersen's experts in analyzing the design attempted to distinguish Petersen's new tool from other Peterson tools in design characteristics. Indeed, Petersen's position would require us to ignore the handle portion entirely and evaluate the entire design simply on the basis of the differences between the Petersen and Lev-

---

**6.** We note that in the same affidavit, the affiant said that the new Petersen tool "from an appearance point of view ... is an addition to its previously existing line." [R–518] We presume the affidavit should read "is *not*" an addition to the line. In any event, we have not relied on this statement.

erWrench jaws. Petersen's claimed design, however, is to the tool's appearance in its entirety, not merely to the jaws configuration. We conclude that, in the design as a whole, the jaws structure—even assuming it embodies some details which are not dictated solely by function—does not create a non-obvious modification of the appearance of prior art tools.

Further, we see no tenable argument that the combination of long nose jaws with a locking handle would not have been obvious. Not only is such a combination found in the LeverWrench device, but also the record contains a letter from a user of other Petersen tools specifically suggesting, for functional reasons, the combination of a long nose pliers with its locking handle, including a description of how he had made such a device by reshaping the jaws of an existing Petersen tool.

With respect to the argument based on the fourth inquiry under *Graham,* in this case, commercial success, if opinion of Petersen's experts is sorted from fact, there is *no evidence* that the acceptance of the tool is due to its ornamental appearance rather than to its filling the need for a quality tool of this type.

In no sense do we disparage the new Petersen tool in reaching our conclusion on obviousness. However, the claimed ornamental design simply does not meet the requirements of the current statute for patent protection.[7] Thus, Central is entitled to judgment as a matter of law with respect to the validity of the patent.

## III
### Unfair Competition

Petersen pleaded that the copying of its product by Central constitutes Central's use of a false designation of origin within the meaning of 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act)[8] since the public has come to rely on the patented design of the new tool to identify Petersen as its sole source. Although somewhat inartfully pleaded, we understand Petersen is claiming that the shape has become, in effect, its trademark, and that Central's sale of tools of the same or substantially the same appearance is likely to cause confusion of the public. Petersen does not assert that Central intentionally passes off its products as those of Petersen.

■■■ Petersen's tools prominently display the word mark VISE–GRIP, which is embossed on the metal handle common to all. Petersen's § 43(a) claim admittedly requires, *inter alia,* that Petersen show such substantial, exclusive and continuous use of the design over a sufficient period of time that the public has come to expect every tool of that shape to be Petersen's product even though it does not bear the VISE–GRIP mark. By proving that the shape has such recognition by the public, the shape can be said to have acquired "secondary meaning" or "distinctiveness". A fortiori, if a shape has *not* achieved a secondary meaning identifying source, there can be no likelihood of confusion as to source.[9]

7. See Judge Rich's review of proposed design legislation in his concurring opinion in *In re Nalbandian,* 661 F.2d at 1218–19, 211 USPQ at 786–87. The need for statutory reform is reiterated.

8. 15 U.S.C. § 1125(a) reads:
 Any person who shall affix, or annex, or use in connection with any goods or services, or any container or containers for goods, *a false designation of origin,* or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of *such designation of origin* or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by an person who believes that he is or is likely to be damaged by the use of any such false description or representation. [Emphasis added.]

9. The views of this author with respect to acquisition of secondary meaning in product shapes and also on the tension between copyright and trademark law in this area were expressed in *In re D.C. Comics,* 689 F.2d 1042, 1051–53, 215 USPQ 394, 401–03 (CCPA 1982). A similar tension exists between design patent and trademark law. *See In re Deister,* 289 F.2d 496, 129

Petersen asserts error in the grant of summary judgment on this claim because whether a shape has acquired secondary meaning is a question of fact. Further, Petersen points to the affidavit of its officer as creating a genuine issue with respect to this fact.[10] We disagree.

The statements on this issue in the referenced affidavit are quoted here in their entirety:

> 15. Finally, I wish to point out to this Court that the shape, configuration and appearance of my company's long nose locking pliers has, in the short time that it has been on the market, acquired a distinctiveness and secondary meaning such that any member of the trade, industry and purchasing public, upon seeing my company's long nose locking pliers knows that it emanates from Petersen and from no other company. [Emphasis added.]

■ No Ninth Circuit precedent provides clear guidance on the protectability of overall product shapes as trademarks. However, in its opinion in *Vuitton et Fils S.A. v. J. Young Enterprises, Inc.,* 644 F.2d 769, 774, 210 USPQ 351, 355 (9th Cir.1981), the court cited with approval *In re Deister Concentrator Co.,* 289 F.2d 496, 129 USPQ 314 (CCPA 1961). *Concentrator Co.,* 289 F.2d 496, 129 USPQ 314 (CCPA 1961). Under that precedent of this court and its progeny, a potential trademark may be found in a product shape which, although functional, is not functional to such a degree that it must be slavishly copied in

order to have a functionally equivalent product, i.e., it is not de jure functional.[11] To assert an *overall* product shape as a mark, the entire design must be arbitrary or non de jure functional. *In re Minnesota Mining and Mfg. Co.,* 335 F.2d 836, 142 USPQ 366 (CCPA 1964). An overall design is not removed from the category of a non-protectable shape (i.e., de jure functional) merely because it includes some arbitrary features. *In re R.M. Smith, Inc.,* 734 F.2d 1482 at 1484 (Fed.Cir.1984). On the other hand, particular features may become an indication of source even though the entire product shape does not meet the criteria. *See Vuitton et Fils S.A. v. J. Young Enterprises, Inc.,* 644 F.2d at 777, 210 USPQ at 357.

■ Giving Petersen the benefit of the doubt that protectable rights could be acquired in its tool shape, or at least in the features which Petersen asserts give it a unique appearance from all other tools, and that secondary meaning could have been established within the short time the new tool had been on the market, we see no genuine issue of fact being raised with respect to secondary meaning by the above quoted affidavit. An affidavit attesting merely to an ultimate fact, here the fact of acquired distinctiveness, avails nothing to the non-movant Petersen. *Auld Co. v. Chroma Graphics,* 714 F.2d at 1150–51, 219 USPQ at 18. As stated in *Moore's Manual, Federal Practice and Procedure,* § 17.09 (2d ed. 1984):

USPQ 314 (CCPA 1961) on de facto secondary meaning which the law does not recognize as creating trademark rights.

**10.** Petersen does not assert error in dismissal of its state law claim. Before the trial court Central attacked both state and federal claims as a matter of law under the holding of *Sears, Roebuck & Co. v. Stiffel,* 376 U.S. 225, 231, 84 S.Ct. 784, 788, 11 L.Ed.2d 661, 140 USPQ 525, 528 (1964) that:

An unpatented article, like an article on which the patent has expired, is in the public domain and may be made and sold by whoever chooses to do so.

Central's position is clearly correct under Ninth Circuit precedent with respect to the state law claim. *Tveter v. A.B. Turn-O-Matic,* 633 F.2d

831, 839, 209 USPQ 22, 30 (9th Cir.1980). *See also Compco Corp. v. Day-Bright Lighting,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669, 140 USPQ 528 (1964). We find it unnecessary in this case to decide whether a comparable federal law claim survives under the principles stated in *Sears* and *Compco.* For a review of the circuits, see J. Gilson, *Trademark Protection and Practice,* § 2.13[4] (1982). For a general discussion of § 43(a) see K. Germain, Unfair Trade Practices Under Section 43(a) of the *Lanham Act: You've Come a Long Way, Baby—Too Far, Maybe,* 49 *Ind.L.J.* 84 (Fall 1973).

**11.** These different concepts of functionality were expressed as "de facto" versus "de jure" functionality in *In re Morton-Norwich Products, Inc.,* 671 F.2d 1332, 213 USPQ 9 (CCPA 1982) dealing with a container shape.

Affidavits containing statements made merely "on information and belief" will be disregarded. Hearsay testimony and opinion testimony that would not be admissible if testified to at the trial may not properly be set forth in an affidavit. The affidavit is no place for ultimate facts and conclusions of law, nor for arguments of the party's cause. [Citations omitted.]

The affidavits of Petersen are devoid of facts from which a conclusion of secondary meaning could be drawn. No evidence came from consumers that they rely on shape alone, rather than on the prominently displayed word mark VISE–GRIP, to identify the source of the product. More particularly, there was simply no attempt by Petersen to show that consumers identify the source of the tool by one or more of the features, such as the curve of the raised portion surrounding the teeth, which Petersen claims are arbitrary and allegedly give the tool a unique appearance. Indeed, in analyzing the ornamental features of the design with respect to the validity of the patent, Petersen sought to convince the court that an ordinary observer *could not judge* what were special design features of the tool and asserted that to an ordinary observer the design might seem to be "prosaic" or "a normal extension of the Petersen line of tools." Yet, it is precisely those unskilled persons who are the key to the unfair competition claim. Those persons are the ones who, Petersen asserts, have come to rely on the subtle details of the tool's appearance to identify source.

Our review of the record convinces us that no evidence has been presented which raises a *genuine* issue respecting the fact of secondary meaning in the Petersen design. At this stage of proceedings, it is not enough to have pleaded a claim which would survive a motion to dismiss. Central presented sufficient evidence to negate, prima facie, the assertion of secondary meaning, i.e., non-exclusive use of the handle design, overall functionality, and the short period of use of the new tool design. Thus

supported, the motion properly tested whether the pleadings were a sham or of substance. The non-movant is not entitled to a full trial if he proffers no "significant probative evidence tending to support the complaint". *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289–290, 88 S.Ct. 1575, 1592, 1593, 20 L.Ed.2d 569 (1967). Rule 56 necessitates that the non-movant raise a *genuine* issue with respect to a fact. Petersen has done no more here than to restate its conclusory pleadings in an affidavit.

There being no genuine issue with respect to secondary meaning in the product shape or features, Central is entitled to judgment as a matter of law on the unfair competition claim.

## IV

### *Attorney Fees*

Petersen asks that we set aside the award of attorney fees to Central under 35 U.S.C. § 285 [12]. The district court failed to make any findings that the case was "exceptional", as it must be to support such award under the statute.

In *Stickle v. Heublin, Inc.*, 716 F.2d 1550, 1564–65, 219 USPQ 377, 387–88 (Fed. Cir.1983), this court vacated an award of attorney fees because insufficient findings were made by the district court and because fees were awarded under 35 U.S.C. § 285 for work on non-patent issues. *Accord, Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*, 407 F.2d 288, 299, 160 USPQ 577, 583 (9th Cir.1969). The same infirmities are present here. *See also, True Temper Corp. v. CF & I Steel Corp.*, 601 F.2d 495, 509, 202 USPQ 412, 423 (10th Cir.1979). Accordingly, the award must be vacated.

## V

### *Remand to a Different Judge*

Finally, Petersen asks us to remand this case with instructions that it be

---

12. 35 U.S.C. § 285 provides:
 The court in exceptional cases may award reasonable attorney fees to the prevailing party.

assigned to a different district court judge. According to Petersen, "The district court has displayed a bias in favor of [Central] in granting attorney's fees and setting an inflated supersedeas bond for appeal." Petersen also asserts the district judge "has established a pattern of precipitously invalidating patents." These points are irrelevant.

Contrary to the apparent view of counsel, we do not sit to judge the character of district court judges. Nor do we have the authority, as counsel asserts, to order assignment of this case to a different judge on remand. Unlike other Circuit Courts of Appeal, (see e.g., *Cord v. Smith*, 338 F.2d 516, 526 (9th Cir.1964)), we have no direct supervisory authority over district courts. *C.P.C. v. Nosco Plastics, Inc.*, 719 F.2d 400 (Fed.Cir.1983). Hence, we cannot act on Petersen's request.

## VI

### *Conclusion*

Since we conclude that Petersen failed to raise a genuine issue of material fact and that Central is entitled to judgment as a matter of law, we *affirm* the district court's order of summary judgment on both counts of the complaint. The award of attorney fees to Central is *vacated,* and the case is *remanded* for further proceedings respecting attorney fees consistent herewith.

AFFIRMED–IN–PART, VACATED–IN–PART and REMANDED.