**SENMED, INC., Plaintiff and
Counterclaim Defendant,**

v.

**UNITED STATES SURGICAL CORP.,
Defendant and Counterclaim
Plaintiff,**

v.

**ETHICON, INC.,
Counterclaim Defendant.**

**No. C–1–86–0114.**

United States District Court,
S.D. Ohio, W.D.

June 3, 1988.

David E. Schmit, Frost & Jacobs, Cincinnati, Ohio, for plaintiff and counterclaim defendant.

---

Jacob K. Stein, David E. Schmit, Cincinnati, Ohio, for defendant and counterclaim plaintiff.

ORDER DENYING DEFENDANT UNITED STATES SURGICAL CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON THE COMPLAINT, GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THE COUNTERCLAIM AND GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THE AMENDED COUNTERCLAIM

SPIEGEL, District Judge.

In this patent infringement action, plaintiff Senmed, Inc. (Senmed) seeks injunctive and monetary relief for defendant United States Surgical Corporation's (USSC) alleged infringement of plaintiff's United States Patent No. 4,319,576 (the '576 patent), entitled "Intraluminal Anastomosis Surgical Stapling Instrument." Defendant USSC denies that it infringed Senmed's patent, and has moved for summary judgment on Senmed's complaint. USSC also counterclaims against both Senmed and Ethicon, Inc. (Ethicon) for infringement of USSC's United States Patent No. 4,573,468 (the '468 patent), entitled "Hollow Body Organ Stapling Instrument and Disposable Cartridge Employing Relief Vent." Senmed and Ethicon have moved for summary judgment on the counterclaims. USSC amended its counterclaim to add claims for inducement of infringement, and Senmed and Ethicon have moved for summary judgment on the inducement claims also.[1]

For the following reasons, we deny USSC's motion for summary judgment on the complaint (the '576 patent), grant Senmed/Ethicon's motion for summary judgment on the counterclaim (the '468 patent) and grant Senmed/Ethicon's motion

for summary judgment on the amended counterclaim (inducement of infringement).

### Summary Judgment Standard

Summary judgment is appropriate in patent cases as well as any other type of case where no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. *Petersen Mfg. Co. v. Central Purchasing, Inc.*, 740 F.2d 1541, 1546 (Fed.Cir.1984). This is true even when the issue is invalidity, *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564 (Fed. Cir.1986), *cert. dismissed*, — U.S. —, 107 S.Ct. 1262, 94 L.Ed.2d 124 (1987), or noninfringement, *George v. Honda Motor Co.*, 802 F.2d 432 (Fed.Cir.1986). However, in patent cases summary judgment must be carefully employed because there are often numerous and complex fact issues rendering them inappropriate for summary disposition. *Chore–Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 778 (Fed.Cir. 1983). As in other cases, when analyzing a summary judgment motion all doubts as to the presence or absence of genuine factual issues and all inferences of fact must be resolved in favor of the nonmoving party. *Petersen*, 740 F.2d at 1546; *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1571 (Fed.Cir.1984). The moving party has the burden of demonstrating the absence of all genuine issues of material fact. *Martin v. Barber*, 755 F.2d 1564, 1566 (Fed.Cir.1985); *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed.Cir.1984).

### Infringement

The Federal Circuit has stated that:

[i]n determining patent infringement, two inquiries are involved—(1) the scope of the claims and (2) whether the claimed invention has been infringed. The first inquiry, a determination of the scope of the claims, is a question of law. If the language of the claims is undisputed, the district court could interpret or construe the undisputed claims as a matter of law.

---

1. This Court recently granted USSC leave to again amend its answer and its counterclaim to assert fraud in the procurement of the Rothfuss '576 patent. Senmed/Ethicon deny the factual allegations upon which USSC seeks amendment. This dispute regarding Senmed/Ethicon's alleged inequitable conduct raises a genuine issue of material fact concerning the '576 patent.

If, however, the meaning of a term of art in the claims is disputed and extrinsic evidence is needed to explain the meaning, construction of the claims could be left to a jury.

*McGill, Inc. v. John Zink Co.,* 736 F.2d 666, 671–672 (Fed.Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984) (citations omitted).

Whether the accused device infringes properly interpreted claims is a factual issue, which is determined by comparing the accused device with the claims in suit. *Martin,* 755 F.2d at 1566–1567. However, if the facts underlying the issue of infringement are undisputed, the district court must apply the claims to the accused device. *Id.*

### Background

USSC and Ethicon, which acquired all of Senmed's assets in November 1983, are the major competitors in the surgical stapler market. The instruments which allegedly infringe USSC's '468 patent were manufactured and sold by Senmed and Ethicon under the trademark PROXIMATE ILS, while the instruments which allegedly infringe Senmed/Ethicon's '576 patent were manufactured and sold by USSC under the trademark AUTO SUTURE EEA.

### The '576 Patent

■ The Rothfuss '576 patent pertains to surgical stapling instruments used in performing circular anastomoses (surgical connection of separate or severed hollow organs to form a continuous channel; for example, portions of the alimentary canal, esophagus, or intestines). Claims 21, 22 and 30 of the Rothfuss '576 patent are involved in the instant case, which claims are directed specifically to the anvil portion of the circular anastomosis stapler.

Before the invention set forth in the '576 patent, circular surgical stapling instruments were noted for the difficulty encountered in removing them from the organs following the stapling procedure. The difficulty arose because the anvil portion of the instrument was somewhat larger than the diameter of the resulting stapled site. The surgical stapling instrument described in the '576 patent specifically provided for an anvil portion with a unique profile, characterized as "button-like," allowing easy removal of the instrument. This button-like configuration eased removal from the surgical site by enabling the "unbuttoning or tire rimming" extraction of the assembly through the suture line while minimizing the undue stretching or tearing which had commonly been encountered during the removal process. This procedure is demonstrated in the illustration below:

**Lift and Rotate**
Work the anastomosis over the anvil by gently lifting the stapled area as you rotate or rock the instrument.

Lift Tissue       Rotate or Rock Instrument       Remove Instrument

The Rothfuss '576 patent was granted March 16, 1982 on an application filed February 26, 1980. However, on October 24, 1984 Senmed asked the Patent Office to reexamine claims 21 and 22 of the patent in light of certain prior art. One such prior art referenced a German patent publication published December 7, 1978, which disclosed an anvil that appears similar to the anvil defined in claim 21 of the Rothfuss patent. Claim 21 was subsequently amended by Senmed by adding language which distinguished it from the anvil disclosed in the German publication. On February 25, 1986 the Patent Office issued reexamination certificate B14,319,576, which found claim 21 patentable as amended. Claims 22 and 30 both depended on claim 21 and were also found patentable.

USSC's Conta patent '468 issued on an application filed in 1981. This was a continuation of an earlier application filed in 1978, which in turn was a continuation of an application filed in 1977. USSC points out that the German publication corresponds to USSC's 1977 application, which Senmed has conceded. The Conta 1977 application disclosed an early protype of USSC's EEA instrument, and the 1978 application disclosed USSC's first commercial EEA instrument, first publicly shown in late 1977. The anvil on that commercial instrument is the same as that shown in the 1977, 1978, and 1981 Conta applications, the Conta patent and the German publication. USSC contends that the anvil of USSC's accused EEA instrument is prior art as to claims 21, 22, and 30 of the Rothfuss patent because USSC's accused instruments were on sale in this country more than one year before the Rothfuss 1980 filing date and were disclosed in a printed publication more than a year before that filing date.

USSC points out that Senmed amended its claim 21 for the express purpose of excluding USSC's anvil from the scope of that claim. Therefore, it contends that if claim 21 excludes USSC's anvil from the scope of the claim, and claims 22 and 30 of the Rothfuss patent are dependent on claim 21, there can be no infringement. Further, USSC argues that if claim 21 does read on its instruments, then 21 must be invalid because the anvil in USSC's accused EEA instrument is prior art. (*See* 35 U.S.C. § 102.) Finally, in the absence of literal

infringement, USSC points out that Senmed's instruments may infringe under the doctrine of equivalence if they perform substantially the same function as the patented device in substantially the same way to accomplish substantially the same result. However, USSC contends that application of this doctrine of equivalence is precluded by the doctrine of prosecution history estoppel. In other words, in order to secure approval of claims 21, 22, and 30 on reexamination, Senmed was forced to amend them so that they did not cover USSC's anvil. Thus, Senmed is estopped by that prosecution history from now contending otherwise.

Senmed argues that there are a number of genuine issues of material fact concerning USSC's motion which preclude the granting of summary judgment. These factual issues include: (1) the proper interpretation of the term "anvil"; (2) the identification of and consideration of extrinsic evidence concerning the meaning of the term "anvil" in the surgical stapling industry; (3) the interpretation of the prosecution history of the '576 patent, including determination of what prior art was distinguished, the teachings of that prior art, and whether the doctrine of prosecution estoppel limits the '576 claim at issue; (4) the identification of the structure of USSC's anvil at issue; (5) the determination of whether the patented structure of the '576 patent has been made, used or sold by USSC; (6) the determination of whether USSC's device performs substantially the same function as the patented '576 device in substantially the same way to accomplish substantially the same results; and (7) the determination of whether USSC relies on its "new thin rimmed" anvil to facilitate extraction of the instrument from a completed anastomosis.

We conclude, after reviewing the memoranda and exhibits both in support of and in opposition to USSC's motion for summary judgment on the complaint, that there are genuine issues of material fact regarding construction of the claims that must be decided. The definition of the term "anvil" is critical. USSC contends that the term "anvil" in the '576 patent claims refers solely to the staple bending part of a surgical stapling instrument, i.e., the sheet metal inserts shown in the Conta '468 patent. Senmed argues that the term "anvil" is a generic term widely used in the surgical stapling industry to connote a means for bending or clinching staple legs and includes any structure necessary to support the bending means in an operable manner to achieve the purposes of a particular surgical stapling device.

It is obvious that the sheet metal bending device contained in the '468 patent of USSC would not operate in the manner necessary to bend the staples without a supporting structure. This presents an issue of interpretation of the '576 claims with regard to the definition of the term "anvil" and the resulting scope of such claims. Furthermore, USSC's use of the term "anvil" in its own marketing material, reproduced below, suggests that Senmed's definition is viable.

Schematic View and Nomenclature EEA Instrument and EEA Disposable Loading Unit

3. Place anvil on top of instrument rod and screw firmly into position. The top of the instrument center rod has to be flush with the top of the anvil.

10. Unscrew anvil by turning counter clockwise and discard. Remove cut end tissue from inside the cartridge with forceps.

11. Remove cartridge by unlocking the twist lock and discard.

CAUTION: Do not touch the front of the cartridge after removing the anvil as the circular knife may cause injury.

SPECIMEN

6. Unscrew anvil by turning counter-clockwise and discard. Remove tissue specimens from inside the cartridge with forceps and discard the instrument. Inspect the tissue specimens to ensure that all tissue layers have been incorporated in the anastomosis.

CAUTION: Avoid handling the top nm of the cartridge to prevent possible injury from the circular knife.

Under these circumstances expert testimony may be required to show how those skilled in the art would construe the asserted claim. *Moeller v. Ionetics, Inc.,* 794 F.2d 653, 675 (Fed.Cir.1986); *Palumbo v. Don–Joy Co.,* 762 F.2d 969, 973 (Fed.Cir. 1985).

Furthermore, we are persuaded that the unique anvil structure of the '576 patented anvil as shown below:

permits the removal of the instrument through the suture line in an relatively atraumatic rotating manner similar to a tire rimming procedure. USSC's modified

anvil and support structure appear to have similar features, i.e., a buttonlike configuration so that a "tire rimming" procedure may be utilized to withdraw the USSC surgical instrument atraumaticly through the suture line. Note schematic of USSC modified anvil:

Modified Anvil

FIG. D

This raises a factual issue of whether USSC's device performs substantially the same function as the patented '576 device in substantially the same way to accomplish substantially the same result. Again, this will depend on the definition of the term "anvil."

For the foregoing reasons we conclude that there are genuine issues of material fact to be decided by the jury on Senmed's complaint for infringement, and accordingly deny defendant's motion for summary judgment dismissing Senmed's complaint.

### The '468 Patent

In its counterclaim, USSC contends that Senmed/Ethicon's PROXIMATE ILS INTRALUMINAL STAPLERS infringe USSC's '468 patent entitled "Hollow Body Organ Stapling Instrument and Disposable Cartridge Employing Relief Vents," which patent covers the mechanical design for a particular type of surgical stapling instrument. Senmed and Ethicon claim they are entitled to summary judgment on USSC's counterclaim of infringement of the '468 patent as a matter of law because all claims of the '468 patent are invalid and unenforceable; and because no product made, used or sold by Senmed or Ethicon infringes any valid claim of the '468 patent.

The Conta, et al. '468 patent was issued on the last of a series of three applications: the original 1977 application, the 1978 Continuation In–Part (CIP) application and the 1981 continuation. Specifications of the 1977 application disclosed a surgical stapler for performing a circular anastomsis having vents to "allow for relief of gas, fluid or excess tissue trapped within the instrument on account of the procedure of stapling." Original claim 18, which is part of the original disclosure, specified that the vents could be located in either, or both, of the anvil or staple carrying parts and that the vents were provided for communicating with the interiors of these parts (the anvil and the staple carrying parts). These vents were for the purpose of relieving the pressure built up in the closed cavity between the anvil carrying and staple carrying parts and facilitating insertion and withdrawal of the apparatus.

The 1978 application essentially repeated the drawings and text of the 1977 application and among other things amplified the need for the vents originally disclosed in the 1977 application. The 1981 application was filed as a continuation of the 1978 application, and the disclosure and drawings in the 1981 application were identical

to the disclosure and drawings in the 1978 application.

According to USSC, at the time the continuation application was filed, a Preliminary Amendment was filed cancelling all prior claims and adding new claims which eventually issued as patent claims 1 to 4. Claims 1 and 4 are independent claims while claims 2 and 3 are dependent. USSC has charged Senmed and Ethicon only with infringement of claims 1, 3, and 4. Claim 1 requires in part the following elements:

(1) a surgical stapling apparatus ... comprising:

.　　.　　.　　.　　.

[r]elief means defined by at least one of said staple-carrying and said anvil-carrying parts to communicate said closed cavity to the exterior of the apparatus for relieving and venting said closed cavity to allow gas and liquid in the cavity to escape and thereby prevent any build up of pressure in said closed cavity as a result of the sudden reduction in volume in said closed cavity produced by the rapid movement of said staple ejector means and said annular knife, said relief means passing through the structure of said staple-carrying part or said anvil-carrying part or both of said parts without using any part of the first or second annular portions of the peripheral surface of the anvil-supporting member to define any portion of said relief means.

These "relief means" permit gas and liquid in the cavity to escape and thereby prevent any build-up of pressure in the closed cavity when the instrument is operating. An examination of the diagrams and renderings below

Anvil-Carrying Part

Relief Means (Apertures)

347 Relief Means (Apertures)

FIG. 66

Anvil-Carrying Part

FIGURE 12 – EMBODIMENT OF FIGS. 23-73
SHOWING RELIEF MEANS IN
ANVIL-CARRYING PART

FIGURE 13 – EMBODIMENT OF FIGS. 23-73 SHOWING RELIEF MEANS IN STAPLE CARRYING PART

discloses that the relief means is a completely independent passage way through the anvil carrying part and the staple carrying part to the exterior of the instrument. During the prosecution of the patent applications resulting in the '468 patent, the inventors characterized their invention as follows:

The present invention is concerned with relieving pressure and venting fluids and tissue which accumulate in the closed cavity during the stapling operation.... Applicants' invention of a relief means for preventing sudden pressure build-up inside a rapidly operating surgical stapling device.

The invention applicants did make was the discovery that such instruments could be improved by providing a vent structure for the staple holding and anvil assemblies....

In claim 1, the relief means communicates the closed cavity to the exterior of the apparatus. It is Senmed/Ethicon's contention that a surgical stapling instrument without relief means venting the closed cavity through the anvil carrying part to the exterior of the instrument cannot infringe claim 1 of the '468 patent. In support of their contention, Senmed/Ethicon point out that the inventors of the '468 patent distinguished the invention of claim 1 from the prior art (U.S. Patent No. 3,88,-847, issued to Kasulin, et al.) by arguing that "[t]hese holes are entirely within the closed cavity of the Russian instrument and do not vent the closed cavity to the outside of the instrument." Thus, by implication, the relief means in claim 1 must vent the closed cavity to the exterior of the surgical instrument.

A second important feature of the device in claim 1 of the '468 patent is that venting must not occur through clearances between the center rod and the anvil carrying part. Therefore, Senmed/Ethicon argue that any surgical stapling instrument which vents using said clearances does not infringe claim 1. Furthermore, the relief means in claim 1 may also be provided in the staple carrying part of the instrument as noted in renderings of the '468 patent as eventually issued. Thus, claim 1 specifically requires that the relief means in the staple carrying part must vent to the exterior of the surgical stapling instrument and cannot be formed by mere clearances between parts.

Dependent claim two of the '468 patent requires, in addition to the elements of claim 1 noted above, that the "... relief means comprises vent holes extending from an interior surface of said anvil-carrying part, which is in juxtaposition to the staple-carrying part, to an exterior surface of said anvil carrying part." Again, the diagrams and renderings accompanying the '468 patent illustrate that the vent holes provide venting from the closed cavi-ty to the exterior of the surgical stapling instrument.

Claim 3 of the '468 patent requires, in addition to the elements of claim 1 mentioned before, that the "... relief means comprises vent holes extending from an interior surface of said staple-carrying part which is in juxtaposition to said anvil-carrying part, to an exterior surface of said staple-carrying part."

Claim 4 of the '468 patent is an independent claim which describes a so-called "by-pass vent" structure. The following relevant elements of claim 4 are required:

(4) Apparatus for joining two hollow tubular sections ... comprising:

.    .    .    .    .

a staple-holding assembly ... having at least one vent hole extending from the interior of the staple-holding assembly to the exterior of the apparatus proximally of the cylindrical outer surface of the staple-holding assembly; and

an anvil assembly ... having at least one vent hole extending from the interior of the anvil assembly to the exterior of the apparatus distally of the cylindrical outer surface of the anvil assembly, the anvil assembly vent hole communicating with the staple-holding and anvil assembly ... having at least one vent hole extending from the interior of anvil assembly to the exterior of the apparatus distally of the cylindrical outer surface of the anvil assembly, the anvil assembly vent hole communicating with the staple-holding assembly vent hole to the space between the interiors of the anvil assembly and the staple-holding assembly to facilitate insertion and withdrawal of the apparatus by allowing gases and liquids in the organ sections to flow around the portions of the apparatus having the cylindrical surfaces of relatively large circumference via the interior of those portions of the apparatus ...

The by-pass passageway is provided through these assemblies [the anvil holding assembly and the staple holding assembly] to relieve gas and liquid pressure which may build up on either side of these assemblies as they are inserted in

or withdraw from the organ sections.... For example, a reduced pressure on the distal side of the anvil assembly would create suction on the apparatus which would increase the difficulty in removing the instrument. Because the large-circumference portions of the apparatus fit snugly in the organ sections, the space, if any, for passage of gas or liquid around the outside of those portions of the apparatus to relieve such pressure differentials is limited.

This problem is avoided in applicants' invention by providing the arrangement of vent holes specified in claim [4] to provide a by-pass passageway through the stapling portion of the apparatus. In this way pressure along the instrument inside the organ sections is substantially equalized so that there are no pressure differentials to interfere with easy insertion and removal of the apparatus.

. . . . .

Moreover, this by-pass vent communicates with the chamber bounded by the staple-holding assembly and the anvil so that it also relieves internal pressure in the apparatus in the manner specified in claim one [1].

USSC contends that Senmed/Ethicon's circular anastomosis staplers, the PROXIMATE ILS and the PROXIMATE ILP, infringe claim 1 and 2 of the '468 patent and certain of the instruments infringe claim 3 and 4 of the patent. In response, Senmed/Ethicon state that their instruments totally lack any type of interior venting feature whatsoever. We have examined all of the diagrams and written materials supplied by the parties, as well as the surgical instruments themselves, and agree with Senmed/Ethicon that its PROXIMATE ILS and PROXIMATE ILP anastomosis staplers do not contain any type of interior venting feature to the outside of the instrument whatsoever. The commercial EEA instrument of USSC incorporates relief means in the anvil carrying part in the form of a number of holes on the forward part of the anvil. These holes have passageways which connect with the cavity between the anvil and the staple carrying parts to allow gases and liquids in the cavity to escape. The relief means passes completely through the structure of the staple carrying part and the anvil carrying part to the exterior of the instrument. An inspection of the diagrams and of Senmed/Ethicon's ILS instrument illustrated below:

1244

Figure 15A
Partially Cutaway Side View
Drawing of Anvil and Staple
Carrying Parts of PROXIMATE ILS Stapler

Figure 15B
Cutaway Side View Drawing
of Staple Carrying Part and
Adjustment Rod of
The PROXIMATE ILS Stapler

---

discloses that such openings as described in claims 1 through 4 in the '468 patent are totally absent. The anvil nut on the ILS instrument is solid and contains no through passageways or holes. The metal anvil secured to the plastic anvil nut also contains no openings or passageways to the outside. Thus, there are no relief means, holes or any other provisions in the anvil carrying part which in any way provide a passageway for gases or liquids to escape from the inside of the anvil to the exterior of the instrument as required by claim 1 in the '468 patent. An examination of the staple carrying part of Senmed/Ethicon's ILS instrument discloses that the housing is completely solid and contains no open-

ings whatsoever, and the interior view of the staple holding part demonstrates that there are no relief means, holes or other provisions which provide a passageway from the interior of the staple carrying part to the exterior of the instrument which could serve to vent gases or liquids.

■ We conclude that Senmed/Ethicon has neither manufactured nor sold an ILS instrument having any type of opening in the staple carrying part of the instrument for venting the interior of the instrument to the exterior. Rather, PROXIMATE ILS instruments have used a non-vented staple carrying part similar to the one shown in Ethicon's '576 patent. There being no genuine issue as to any material fact regarding

Senmed/Ethicon's PROXIMATE ILS instrument infringing claim 1 of the '468 patent, summary judgment in favor of Senmed/Ethicon is appropriate on this issue. Moreover, we conclude that Senmed/Ethicon's instruments which utilize a bored adjustment rod do not infringe the '468 patent as the rearward end of the adjustment rod is solid and any gas or liquid that might enter the opening of the adjustment rod could not pass into the staple carrying part and to the outside of the instrument. Thus, under no circumstances could the bore in the adjustment rod serve as a relief means or vent for the staple carrying part. The only possible method for gas or liquid to pass to the exterior of the staple carrying part would entail using clearance in the instrument as a vent, which was clearly excluded from the coverage of claim 1. Therefore, the residual bore and holes in the adjustment rod of the PROXIMATE ILS instrument cannot serve as relief means as called for by the '468 patent and there can be no infringement of claim 1.

USSC has conceded that claim 2 of '468 patent is not infringed by the ILS instruments. Since we have concluded that claim 1 has not been infringed by the ILS instruments, claim 3, which depends on it, also is not infringed. *See* 35 U.S.C. § 112.

█ With regard to claim 4, an inspection of the photographs and diagrams of the Senmed/Ethicon and USSC surgical instruments discloses that the bypass feature of claim 4 is not found on the ILS instruments. There is no vent hole in either the staple holding or anvil holding parts, there is no clearance which can be considered a hole extending from the interior surface of the staple carrying housing to an exterior surface of such housing, and there is no corresponding structure in the ILS instruments which performs a function called for by this claim, to wit, facilitating the insertion and withdrawal of the instrument by allowing gases and liquids to flow through the vent holes. We conclude that there is no genuine issue of material fact relating to the infringement of claim 4 of the '468 patent by Senmed/Ethicon, and therefore they are entitled to summary judgment of non-infringement as a matter of law.

Having concluded that there is no genuine issue as to a material fact concerning Senmed/Ethicon's infringement of USSC's '468 patent, we conclude that summary judgment in favor of Senmed/Ethicon dismissing USSC's counterclaim against them for infringement should be granted. We therefore decline to rule on the '468 patent's validity. *Unette Corp. v. Unit Pack Co.*, 785 F.2d 1026, 1029 (Fed. Cir.1986); *Landis Mach. Co. v. Chaso Tool Co.*, 141 F.2d 800, 805 (6th Cir.), *cert. denied*, 323 U.S. 720, 65 S.Ct. 52, 89 L.Ed.2d 579 (1944).

### *Inducement of Infringement*

█ USSC amended its counterclaim to add claims for inducement of infringement, alleging that Senmed/Ethicon induced infringement of patent '468 before the actual date of the grant of the patent. Senmed/Ethicon moves for summary judgment on these claims.

Because we have decided that Senmed/Ethicon have not infringed USSC's '468 patent, we fail to see how they can be held accountable for inducing infringement before the patent issued. Therefore, infringement being a threshhold requirement which USSC has failed to meet, summary judgment on USSC's claim for induced infringement must be granted as there are no material issues of fact to be decided and Senmed/Ethicon are entitled to judgment thereon as a matter of law.

### *Conclusion*

It hereby is Ordered that USSC's motion for summary judgment on the complaint (doc. 151) is denied, Senmed/Ethicon's motion for summary judgment on the counterclaim (doc. 36) is granted and Senmed/Ethicon's motion for summary judgment on the amended counterclaim (doc. 86) is granted.

SO ORDERED.